[Civ. No. 1157. Fourth Appellate District.—October 18, 1934.]

SIDNEY SMITH, Appellant, v. CITY OF GLENDALE (a Municipal Corporation) et al., Respondents.

Andrew M. Strong for Appellant.

Bernard Brennan, City Attorney, Aubrey N. Irwin, Assistant City Attorney, and A. L. Lawson, Deputy City Attorney, for Respondents. ·

MARKS, J.—This is an appeal from a judgment entered after sustaining a demurrer to plaintiff's second amended complaint without leave to amend.

The City of Glendale is a municipal corporation organized and existing under a freeholders' charter adopted under authority of sections 6 and 8 of article XI of the Constitution. This charter reserved to the city complete control of its municipal affairs. The individual defendants are officers of the City of Glendale.

The plaintiff is a citizen and resident of the City of Glendale and the owner of property assessed in and subject to taxation by the city.

This action is brought to enjoin the defendants from expending $20,000 from its water rights purchase fund, or any other of its funds, for the purchase of stock in the Verdugo Canon Water Company. While it only may be inferred from the complaint, it is not questioned in the briefs that the purpose of acquiring the stock is to furnish the City of Glendale an additional supply of domestic water for distribution to its citizens. We will therefore assume this to be true.

The charter of the City of Glendale (Stats. 1921, p. 2204; Stats. 1923, p. 1646; Stats. 1931, p. 2693) contains the following provisions:

"The City of Glendale shall have the right and power to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in this charter, . . .

"To acquire by purchase, bequest, devise, gift, condemnation or other manner sanctioned by law, within and without the limits of said City, property of every kind and nature for all purposes;

"To acquire by said means, and to establish, maintain, equip, own and operate, either within or outside of the city . . . waterworks, filtration plants, . . . or any other works necessary to a public utility; and to join with any other city or cities or county in the acquisition, construction and maintenance of same; . . .

"To furnish the city or its inhabitants or persons without the city, any public utility service or commodity whatsoever . . .

"General Powers of the Council: Subject to the provisions and restrictions in this charter contained, and the valid delegation by this charter of any powers to any person, officer, board or committee, which delegation of power, if any, shall control, the Council shall have the power, in the name of the city, to do and perform all acts and things appropriate to a municipal corporation and the general welfare of its inhabitants and which are not specifically forbidden by the Constitution of the State, or which now or hereafter it would be competent for this charter specifically to enumerate. No enumeration or specific statement herein of any particular powers shall be held to be exclusive of, or a limitation of,. the foregoing general grant of powers.''

It is well settled in California that since the amendment in 1914 of section 6 of article XI of the Constitution giving the right to chartered cities to control their municipal affairs, the charter of a city availing itself of that right is the supreme law of the city on its municipal affairs (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 Pac. 351]; *Cole* v. *City of Los Angeles,* 180 Cal. 617 [182 Pac. 436]; *Hayes* v. *Handley,* 182 Cal. 273 [187 Pac. 952]; *In re Nowak,* 184 Cal. 701 [195 Pac. 402]; *City of Pasadena* v. *Charleville,* 215 Cal. 384 [10 Pac. (2d) 745]; *Bank* v. *Bell,* 62 Cal. App. 320 [217 Pac. 538]). In *In re Nowak, supra,* it is said:

"By 1914 amendment to section 6 of article XI of the Constitution of California a new scheme for city charters was adopted, in that it was provided that 'cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this

Constitution may amend their charters . . . so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws'. . . . The net result of this situation is that, as to municipal affairs, the charter, instead of being a grant of power, is, in effect, a limitation of powers.''

After extensive citation of authorities, the court in *Bank* v. *Bell, supra,* said:

''To recapitulate, it appears that, since the 'municipal affairs' amendments of 1914 to the Constitution, for such cities as have brought themselves within the condition of the amendments, the law is firmly established as follows: The powers of the city are not derived from the legislature, but from a freeholders' charter directly provided for by the Constitution. The city in its charter may make and enforce all laws and regulations in respect to municipal affairs subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by the general laws. The powers of the city are all-embracing, restricted, and limited by the charter only and free from interference of the state by general laws. The result is that the city has become independent of general laws upon municipal affairs.''

It cannot now be doubted that the furnishing of domestic water to its citizens is a municipal affair of a chartered city. (*City of Pasadena* v. *Charleville, supra; In re Orosi Public Utility District,* 196 Cal. 43 [235 Pac. 1004]; *City of South Pasadena* v. *Pasadena Land & Water Co.,* 152 Cal. 579 [93 Pac. 490]; 18 Cal. Jur., p. 785, sec. 96, and cases cited.)

Plaintiff urges that section 31 of article IV of the Constitution provides that the legislature shall not have power to authorize the state or any political subdivision thereof ''to subscribe for stock or to become a stockholder in any corporation''; that whatever the people, through the Constitution, have prohibited the state from doing cannot be done by a subdivision of the state; that constitutional

restrictions imposed upon the legislature of a state rest with equal force upon the legislative bodies of instruments of government created by the state. In support of these rules he cites: Cooley on Constitutional Limitations, 7th ed., p. 278; 8th ed. of same, p. 412, *North American Cold Stor-age Co.* v. *Chicago,* 211 U. S. 306 [29 Sup. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276], *New Orleans Water-Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18 [8 Sup. Ct. 741, 31 L. Ed. 607], *Meriwether* v. *Garrett,* 102 U. S. 472 [26 L. Ed. 197], *United States* v. *New Orleans,* 98 U. S. 381 [25 L. Ed. 225], and *Murray* v. *Charleston,* 96 U. S. 432 [24 L. Ed. 760].

Regardless of the eminent authority relied upon by plaintiff to support his views, we have a somewhat isolated situation in California where the Constitution places a limitation on the power of the state legislature and at the same time contains a broad grant of power to chartered cities that avail themselves of it. The question seems to have been decided adversely to the contention of plaintiff by the Supreme Court of this state in the case of *Los Angeles Gas & Electric Corp.* v. *City of Los Angeles,* 188 Cal. 307, at page 317 [205 Pac. 125], where it is said:

"As already stated, appellant contends that the contract violates section 31 of article IV of the Constitution . . .

"This provision of the Constitution is in the article regulating the powers of the legislative department of the state government and is a limitation upon the power of the state legislature. The powers of the city of Los Angeles are not derived from the legislature, but from a freeholders' charter directly provided for by the Constitution. That is to say, the people of the state through the Constitution authorize the people of the city to regulate its affairs by a charter to be framed by a board of freeholders and voted upon by the people of the city and approved by a resolution of the legislature. Section 31 of article IV has no application to a city charter." (See, also, *Bank* v. *Bell, supra.*)

As we have been cited to no constitutional or charter provision prohibiting the City of Glendale from securing a portion of its domestic water supply through the ownership of stock in a private corporation and as the charter

468

of that city gives to it the right to establish, maintain, equip, own and operate waterworks and furnish its inhabitants with any public utility service or commodity, besides other broad powers, we can see no reason why that city cannot acquire part or all of its domestic water supply through ownership of stock in a private water company and use its surplus funds with which to purchase such stock.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1934.