[Civ. No. 13442. First Dist., Div. One. Dec. 12, 1947.]

DANIEL SCANNELL et al., Respondents, v. DANIEL C. MURPHY, Appellant.

John J. O'Toole, City Attorney, Geo. A. Helmer and Edward I. Fitzpatrick, Deputy City Attorneys, and Raymond D. Williamson for Appellant.

Charles P. Scully for Respondents.

PETERS, P. J.—The respondents on this appeal are within the civil service classifications of jailer, captain of the watch, jail matron and operating engineer, and all worked during the fiscal year 1944-1945 in the department of the appellant, the Sheriff of San Francisco, in the city and county jails on a rotating three shift basis, 8 a. m. to 4 p. m.; 4 p. m. to midnight; and midnight to 8 a. m. It is admitted that during the fiscal year in question all of the petitioners worked some time on the two night shifts and some time on the day shift. The respondents claim, and the trial court found that, although the sheriff has certified that these respondents worked on eight-hour shifts, for six days a week, he has refused to certify that part of this period was worked on the night shifts. This becomes important because, under the salary ordinance then in effect, employees on a monthly salary were entitled to overtime for over 40 hours work on a day shift and for over $37\frac{1}{2}$ hours work on a night shift. Admittedly, the sheriff has certified that these employees were on eight-hour shifts for six days a week, and the employees have accordingly been paid overtime at the day rate overtime basis for 48 hours work, which is 20 per cent in excess of regular salary. The excess overtime pay fixed by the ordinance for night shift overtime pay for a 48-hour work week is $27\frac{1}{2}$ per cent of normal salary. Respondents contend that during the period they worked night shifts they were entitled to this excess of $7\frac{1}{2}$ per cent. The trial court, by peremptory writ of mandate, has directed the sheriff to "prepare, approve, sign, and transmit to the Civil Service Commission of the City and County of San Francisco, State of California, timerolls or payrolls for each month included in the fiscal year commencing July 1, 1944, and ending June 30, 1945, . . . showing that said work of each said petitioner was for 8 hours per day for 6 days per week on night shifts." From this judgment the sheriff appeals.

It should be mentioned that the Civil Service Commission, the city, and the controller were originally made parties to this proceeding, but their demurrers were sustained, apparently on the theory that they were under no duty to act until the head of the department certified the payrolls.

The pertinent statutory provisions are as follows: Section 2.2(c) of the 1944-1945 salary ordinance provided: "Night Shifts: Seven and one-half hours per day and five days per week shall constitute the normal work day and week for calculating the compensations for employees whose compensations are fixed herein on a monthly basis and who work on night shifts. A night shift is any full time shift which commences after 2 p. m. and prior to 6 a. m."

Section 2.3(b) provided: "Pursuant to the provisions of Section 4, Subdivision (f) of the Salary Standardization ordinance department heads may require occupants of the following specified positions the salaries for which are based on a monthly basis to work in excess of the five days and 40 hours for day shifts and five days of 7½ hours for night shifts for the number of hours hereinafter specified. Employees required to work in excess of the normal work weeks as above specified shall be compensated as follows: . . .

Night Shifts . . .

48 hours, 27½% above the compensation fixed herein for their respective classifications . . .

Sheriff . . .
D 52 Jail Matron . . .
D 60 Jailer
D 64 Captain of Watch . . .
0168.1 Operating Engineer."

At all pertinent times section 150 of the city charter provided as follows:

"All personal services shall be paid by warrants on the basis of a claim, bill, timeroll or payroll approved by the head of the department or office employing such service. The claims, bills or payrolls hereinafter designated as payrolls, for salaries, wages or compensation for personal services of all officers, assistants and employees of every class or description, without regard to the name or title by which they are known, for each department or office of the city and county shall be transmitted to the civil service commission before presentation to the controller.

"The secretary of the commission shall examine and approve such payroll for all persons legally appointed to or employed in positions legally established under this charter. The payrolls thus approved, with notation of any item thereof disapproved, shall be then certified by the secretary to the commission and transmitted by him to the controller. The controller shall not approve and the treasurer shall not pay any claim for personal services, or pay check or warrant for salary, wages or compensation unless the same shall have been approved by the said secretary."

It was the position of appellant in the lower court, and it is his position here, that while respondents were working on the two night shifts, they only worked for seven and one-half hours and that the other half hour spent in the jail on the various eight-hour shifts was free time devoted to the eating of a meal. In this connection appellant calls particular attention to the language of section 2.3(b) of the salary ordinance permitting department heads to "require" employees to work overtime, and contends that there is no evidence that he ever "required" or "directed" his employees to work in excess of the seven and one-half hours per day. It is his thought that this section demands that before overtime is allowed the head of the department must expressly order his employees to work overtime and that an implied order is not sufficient.

There is no doubt that the appellant, and his undersheriff William Hollingbery, Jr., testified that all of the jail employees on all shifts put in but seven and one-half hours of work, and were permitted one-half hour on each shift free time to eat a meal. The sheriff testified that this had been the custom in the jails for many years prior to 1944-1945, and that he did not vary the custom in that fiscal year. He denied that he had "directed" or "required" any one of the respondents to work longer than seven and one-half hours on any shift.

As opposed to this evidence, several of the respondents testified that on the two night shifts they were on duty for a full eight hours, and, while admitting that some of them ate a meal during the eight hours, they contended that they were bound to their posts during the meal period, and subject to call. In this connection respondents introduced into evidence a set of rules and regulations governing their conduct in the performance of their duties for the year in question. These regulations had been drafted by a prior sheriff, and appellant

admitted that they were in effect when he assumed office. He testified that he permitted these regulations to remain in effect and that each new employee was required to read them. He also admitted that he issued no repealing or amending order respecting these regulations until after the end of the fiscal year here in question. It is admitted that there is nothing in the regulations which authorize any jail employee to take a half hour off during any eight-hour shift for the purpose of eating. The regulations, in fact, indicate that the employees must work a full eight-hour shift. Thus, in reference to hours of duty, it is provided that: ''The jail shall be policed at all times of the day and night, there being three (3) watches provided for this purpose. . . . Eight (8) hours shall be worked by each watch, unless otherwise ordered by the Superintendent.'' No contrary order was ever made by the superintendent. The regulations further require the jailers ''to be watchful and on the alert at all times''; prohibit them from performing any ''act that may divert their attention from the efficient performance of their duties''; require that two jailers be on duty ''in front of the felony wing at all times,'' and that one jailer must be ''on the bridge at all times''; and each employee must remain on duty ''until relieved.''

■ Respondent Scannell testified that employees on the night shifts were given no time off for meals; that he and the others would eat while on watch at their respective stations; that they were on duty during the periods they were eating; that they were required to remain in uniform during the entire eight-hour shift and were prohibited from leaving the jail premises during the eight hours. The evidence also shows that, under the law, a matron must be on duty in the women's jails at all times, that on night watches there is but one matron on duty at each jail, and that no provision is made to relieve the matrons so that they can take a half hour for meals.

Further reference to the evidence is unnecessary. It is quite obvious from the above summary that the finding of the trial court that respondents, while working on the night shifts, were ''required'' by appellant to work eight hours a shift as that term is used in section 2.3(b) of the salary ordinance is amply supported. If an express order is required under the section, the regulations admittedly applicable constitute such an order. The existence of the so-called ''custom'' to the con-

trary testified to by appellant was denied by respondents. This conflict was for the trier of the fact.

The next contention of appellant is that respondents have not come into court with "clean hands" and for that reason are barred from relief. ■ There is no doubt, of course, mandate being an equitable action (*Potomac Oil Co.* v. *Dye,* 10 Cal.App. 534 [102 P. 677]), that the so-called "clean hands" doctrine is applicable generally to such a proceeding. The theory of appellant is that these respondents worked not only on the two night shifts, but also on the day shift, and, it is urged, that the uncontradicted evidence shows that whatever the rule may have been on the night shifts, on the day shift the employees worked but seven and one-half hours. Admittedly, the employees were paid for eight hours' work on the day shift. It is therefore contended that the record shows that the respondents, even though underpaid on the night shifts, were overpaid on the day shifts, and therefore do not have "clean hands."

The difficulty with this argument is that its basic premise is unsound. The uncontradicted evidence does not show that the respondents worked but seven and one-half hours on the day shift. While there is some evidence to that effect, the evidence of respondents is reasonably capable of the interpretation that on all shifts they worked eight hours. Certainly the regulations draw no such distinction between the night and day shifts, and appellant has certified to the Civil Service Commission that all respondents worked eight-hour watches.

■ Moreover, this issue was not presented to the trial court, was not involved at the trial, and no findings were made on it. It was held in *Watson* v. *Poore,* 18 Cal.2d 302 [115 P. 2d 478], that the "unclean hands" doctrine must be raised in the trial court to be available as a defense, and cannot, as here, be raised for the first time on appeal. If it be a fact that respondents were overpaid while working on the day shifts, that fact not having been here in issue and not having been passed upon, it may be litigated in a proper proceeding, subject to whatever defenses respondents may have to the point. It may not be litigated on this appeal.

It is next urged that by this proceeding respondents are seeking to recover overtime pay improperly withheld, that is, they are seeking to recover money only, and it is contended *mandamus* may not be used for such a purpose where the legal remedy is adequate. (*Johnston* v. *State Comp. Ins.*

*Fund,* 41 Cal.App.2d 516 [107 P.2d 102]; *Northrup* v. *Haynes,* 15 Cal.App.2d 665 [59 P.2d 1056]; *Coombs* v. *Smith,* 17 Cal.App.2d 454 [62 P.2d 380].) There is no doubt that these cases, and particularly the last two, stand for the proposition that *mandamus* may not be used to recover money in a specific sum from a governmental agency for past services where that is the sole issue presented. But that is not the present case. Here the purpose of the proceeding is to compel the head of a department of a governmental agency to certify and transmit payrolls to the other city departments showing the periods these respondents worked on the night shifts during the year in question. Appellant has certified these payrolls showing that on the days in question these respondents worked on eight-hour shifts without designating whether these were day or night shifts. Under the charter (§ 150) the Civil Service Commission will not examine, the controller will not approve and the treasurer will not pay the claimed overtime without the certification of the head of the department in charge of the work records of the employees. What is sought is the certification and transmittal of the work records to the proper authorities—not the payment of money. In the cases relied upon by appellant the petitioners there involved were seeking the payment of back wages in specific sums, where the governmental agency refused to pay. Here the city has not refused to pay, in fact, it clearly appears it will pay upon proper certification and transmittal. This is not trying a case piecemeal as contended by appellant. ■ The pleadings and evidence show that appellant is the only one in the governmental setup that has refused to act. This proceeding was brought to start the chain of municipal action required under the charter as a condition precedent to qualify the respondents for overtime pay. Certification and transmittal by appellant are conditions precedent to a determination of respondents' rights. *Mandamus* is the proper proceeding for such a purpose.

■ Appellant next complains of the form of the judgment. The judgment directs the issuance of a writ commanding appellant to certify and transmit to the commission payrolls for the year in question "showing the classification in which each said petitioner worked, and further showing that said work of each said petitioner was for 8 hours per day for 6 days per week on night shifts." Appellant contends that this judgment compels him to certify that respondents were employed exclusively on night shifts during the year in ques-

tion, which is contrary to the admitted fact. There is no doubt at all that the evidence shows, without conflict, that during the year in question the respondents all rotated between the day and night shifts. The judgment is undoubtedly ineptly drawn, and capable of the interpretation placed upon it by appellant. But that is not the only way to interpret the language. What the trial court undoubtedly meant was that, whenever respondents had in fact worked on night shifts during the year involved, they worked for eight hours, six days a week. Out of an abundance of caution, however, and in order to fully protect appellant, that judgment is modified to provide that the writ shall direct the sheriff to certify and transmit the payrolls of respondents so as to show when respondents worked on night shifts during the year in question, and to show that when they did work on such night shifts they worked eight hours a day for six days a week.

The judgment is modified as above indicated, and as so modified is affirmed; respondents to recover costs on appeal.

Bray, J., and Finley, J. pro tem., concurred.

A petition for a rehearing was denied January 10, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 9, 1948.