[S. F. No. 18624. In Bank. July 2, 1954.]

LIONEL TEVIS et al., Respondents, v. CITY AND
COUNTY OF SAN FRANCISCO et al., Appellants.

Dion R. Holm, City Attorney, Bernard J. Ward and Jack G: McBride, Deputy City Attorneys, A. Dal Thomson and Thomas M. O'Connor, Public Utilities Counsel (San Francisco) for Appellants.

Delany, Fishgold & Minudri and Molly H. Minudri for Respondents.

EDMONDS, J.—Twenty-three former employees of the municipal railway of the city and county of San Francisco seek a writ of mandate to compel certain city officials to allow them vacation pay for two calendar weeks. Their petition, on behalf of themselves and all other employees similarly situated, names as defendants the city and county, the members of the public utilities commission and its manager, the secretary of the civil service commission, the controller, and the treasurer of the city and county.

Prior to 1950, it was the practice of the city and county to grant to each municipal employee an annual vacation of two weeks, with pay, in accordance with section 151 of its charter and sections 375 to 380 of part I of its Municipal Code. In *Adams* v. *City and County of San Francisco* (1948), 94 Cal.App.2d 586 [211 P.2d 368, 212 P.2d 272], it was held that when wages of municipal employees were fixed under section 151.3 of the charter at the rate of pay "generally prevailing for [similar] groups or crafts in private employment in San Francisco pursuant to collective bargaining agreements," vacation rights also should be governed by the provisions of such collective bargaining agreements.

The petitioners were members of a group of employees whose wages were fixed by collective bargaining agreements which made no provision for paid vacations. After the Adams case was decided, vacations for those employees were discontinued. They received no paid vacation for the fiscal year of 1949-1950.

Section 151.4[1] of the charter, concerning vacation rights, was enacted while the Adams case was pending and became effective January 1, 1951. At an election held on June 6, 1950, the voters of the city and county approved a proposed charter amendment which, after legislative approval, became effective on September 26, 1950, as section 151.5[2] of the charter. An argument accompanying the measure and urging its approval stated that it was submitted on behalf of a small group of city employees who, because of a "legal technicality via court action," were deprived of the vacation rights previously given to them. Its purpose was "to clarify existing vacation rights granted all other City Employees and thereby have restored the same vacation privileges enjoyed by all other departments within the City Government."

---

[1]Reading in part: "Every person employed in the city and county service shall, after one year's service, be allowed a vacation with pay of two calendar weeks, annually, as long as he continues in his employment. . . ."

[2]Section 151.5 reads: "(a) Every employee of the City and County of San Francisco whose rate of compensation is fixed pursuant to the provisions of section 151.3 of this charter shall be entitled to receive an annual vacation at the time, with the pay and of the duration specified in section 151.4, and no section of the charter nor any provision of any collective bargaining agreement nor any street railway or bus wage schedule shall be construed in any manner or for any purpose to increase, reduce or otherwise affect the time or duration of, or pay for, vacations provided by section 151.4, nor shall any employee be deemed to have any vacation rights other than or in excess of the vacation rights specified in section 151.4.

"(b) The vacation rights granted by section 151.4 or by this section, or contained in any collective bargaining agreements, or in any street railway or bus wage schedules, as any of said terms are referred to in section 151.3 of this charter, shall in no way increase, reduce or otherwise affect or be deemed to affect the wage or pay rate or schedule determinations made pursuant to the provisions of said section 151.3.

"(c) All vacation payments heretofore made to employees of the City and County of San Francisco in the manner and to the extent prescribed by sections 375 to 380, inclusive of Part I of the San Francisco Municipal Code, are hereby deemed to have been earned and the payments therefor are hereby ratified and validated, and for all services rendered by employees during the calendar years 1948, 1949 and 1950 vacations shall be granted and paid pursuant to the terms of said sections of the Municipal Code.

"(d) This section shall become effective upon approval by the State Legislature."

A short time after the election but before section 151.5 became effective, the petitioners lost their positions because of a reduction in force. In accordance with the amendment, all employees in the municipal service, whose right to paid vacations during 1948, 1949 and 1950 had been disallowed because of conflicting collective bargaining agreement provisions, were given payment or compensating time off equal to two weeks of paid vacation in each of those years. However, no payment was made to the petitioners or to others whose employment was terminated before the effective date of section 151.5.

The trial court made findings in accordance with the foregoing statement of facts and concluded that each of the petitioners is entitled to receive wages for two weeks as vacation pay. By peremptory writ of mandate, the city officials, and in particular the members of the public utilities commission, the secretary of the civil service commission, and the controller, were directed to certify and approve payrolls and timerolls setting forth the petitioners' right to receive the amounts to which each is entitled and to pay those amounts. The appeal is from that judgment.

The city officials contend that section 151.5 should be construed as conferring vacation rights upon only those persons who were employees when it became effective and performed services after that time. Another argument is that, even if the petitioners properly may claim the right to receive vacation pay, mandate is not a proper remedy.

By its express terms, the amendment did not become effective until approved by the Legislature, at which time the petitioners' employment had been terminated. The city officials rely upon that provision as stating the intention of the framers of the amendment to give the enactment only prospective application. The petitioners take the position that the only purpose of stating the effective date of the new section is to fix a time from which payments for vacations should be calculated.

A charter amendment may specify the time at which it shall become effective as municipal law, but such an enactment may also fix an operative date from which the rights and duties arising under the new provision are to be measured. *Williams* v. *City of Vallejo,* 36 Cal.App. 133 [171 P. 834], and *Callahan* v. *City & County of San Francisco,* 68 Cal. App.2d 286 [156 P.2d 479], construed charter amendments which clearly indicated that the rights created were to be

measured at a time differing from the amendment's adoption. Accordingly, the principal issue under the amendment here in controversy is whether it demonstrates an intent to allow the employees pay for vacation in connection with services performed prior to its effective date.

■ It is well established that statutes and other enactments should not be given a retroactive operation unless the legislative intent to do so is clearly apparent. (*Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.*, 30 Cal.2d 388, 393 [182 P.2d 159].) ■ However, by its express terms section 151.5 provides that it shall have some retroactive application. Subsection (c) states: "All vacation payments heretofore made to employees . . . are hereby deemed to have been earned and the payments therefor are hereby ratified and validated, and for all services rendered by employees during the calendar years 1948, 1949 and 1950 vacations shall be granted and paid pursuant to the terms of [sections 375 to 380, inclusive of Part I] the Municipal Code." The clear purpose of this provision is to validate payments made for vacations to which employees were not entitled under collective bargaining agreements. It also authorized the city to pay for vacation time in employment where, because of such agreements, no vacation pay was allowed.

In fixing the method in which vacations are to be computed, section 151.5 makes reference to sections 375 to 380 of part I of the Municipal Code.[3] Because section 375 allows an annual vacation to an employee "as long as he remains in the City and County service," the city officials argue, the reference to that section in the charter amendment indicates an intent to make continued service a condition precedent to payment of vacation pay.

■ Section 375 does not concern the length of, or payment of compensation for, annual vacations, but merely defines the employee's right to receive them. The limitation as to the time of employment serves two purposes. It insures to an employee that his right to an annual vacation will continue throughout his service with the city and county;

---

[3]Section 375 provides: "Every employee in the City and County service . . . shall be allowed an annual vacation as provided herein as long as he remains in the City and County service."

Section 376 states in part: "Employees shall be allowed a vacation of two calendar weeks, and the compensation paid to employees during the vacation period shall be the amount the employee would earn during his vacation period if working at his current rate of pay and work schedules without inclusion of overtime earnings. . . ."

it also prevents him from claiming the right to such a vacation for any year after the termination of his service. But separation from service should in no way affect his right to receive pay for accrued vacation rights. In an analogous situation, it has been held that, in the absence of a clear indication of a contrary statutory intent, an employee's separation from governmental service should not prevent him from receiving the cash equivalent of vacation rights accrued to him for services rendered prior to his separation. (*Pohle* v. *Christian*, 21 Cal.2d 83, 89-90 [130 P.2d 417].)

Subsection (c) of section 151.5 states that ''for all services rendered by employees during the calendar years 1948, 1949 and 1950 vacations shall be granted and paid pursuant to the terms of said sections of the Municipal Code.'' By express terms, the statute granted vacation rights retroactively as compensation for services performed during those years. As stated in the argument accompanying the proposed measure, it was enacted to remedy the injustice which resulted when employees were deprived of vacation rights because of restrictive provisions in the controlling collective bargaining agreements. Certainly those persons whose employment was terminated before they could enforce their vacation rights should be in no different position from the employees who continued in the service of the city and county. It is more logical to conclude that the reason for the charter amendment's reference to other sections of the Municipal Code is to provide a method of computing the amount of vacation pay to which the employee is entitled. Section 376, the principal section dealing with the computation of vacation payments, makes no requirement of continued service to entitle an employee to receive pay for accrued vacation rights, nor does any other section dealing with such computations. In the absence of a more explicit statement to the contrary, it is unreasonable to conclude that the framers of the charter amendment, by reference to those sections, intended to make continued service a condition precedent to receiving payment of vacation pay as a reward for services previously performed.

The appellants take the position, however, that a retroactive application of the charter amendment to allow payments to the petitioners would be a gift of public funds or a grant of extra compensation in violation of provisions of the State Constitution. (Cal. Const., art. IV, §§ 31, 32.) The petitioners point out that the city and county is governed by a free-

holder's charter (Cal. Const., art. XI, § 8) and argue that extra compensation of municipal employees is a municipal affair and not subject to the prohibitions of sections 31 and 32 of article IV.

In *Los Angeles G. & E. Corp.* v. *Los Angeles,* 188 Cal. 307 [205 P. 125], it was contended that a contract between the city and a private utility for the distribution of electrical energy violated the prohibition of section 31 of article IV against the lending of credit. The court rejected the contention, saying: "This provision of the constitution is in the article regulating the powers of the legislative department of the state government and is a limitation upon the power of the state legislature. The powers of the city of Los Angeles are not derived from the legislature, but from a freeholders' charter directly provided for by the constitution. That is to say, the people of the state through the constitution authorize the people of the city to regulate its affairs by a charter to be framed by a board of freeholders and voted upon by the people of the city and approved by a resolution of the legislature. Section 31 of article IV has no application to a city charter. It is expressly provided by the constitution, article XI, section 6, that the city in its charter may make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws. The sale and distribution of electrical energy manufactured by a city is a municipal affair and one over which the legislature of the state has no control." (Pp. 317-318.)

That conclusion has been followed in other decisions involving charter provisions assertedly in violation of the constitutional prohibition against gifts of public funds. (*Mullins* v. *Henderson,* 75 Cal.App.2d 117, 132-133 [170 P.2d 118]; *Smith* v. *City of Glendale,* 1 Cal.App.2d 463, 465-466 [36 P.2d 1083]; see *Bank* v. *Bell,* 62 Cal.App. 320, 328-329 [217 P. 538].) The Mullins case is similar to the present situation in that it concerned payment of wages to public employees, beyond doubt a municipal affair. (*Cf. Department of Water & Power* v. *Inyo Chem. Co.,* 16 Cal.2d 744, 753 [108 P.2d 410].)

Section 150 does not bar the petitioners' right to vacation pay. If it be assumed that payment to an employee for an annual vacation is compensation for "a greater time than that covered by his actual service," the intent to make

such payment is clear from section 151.5, and the latter provision, being later in time, would control the earlier provision. (*Cf. Adams* v. *City & County of San Francisco,* 94 Cal.App.2d 586, 593 [211 P.2d 368, 212 P.2d 272].)

Even if the right of petitioners to receive vacation pay be established, the city officials next contend, the present proceeding in mandate is improper to enforce such right. They assert that mandate may not be used to compel the payment of a claim for wages.

■ It is a general rule that the extraordinary remedy of mandate is not available when other remedies at law are adequate. (*Irvine* v. *Gibson,* 19 Cal.2d 14, 15-16 [118 P.2d 812].) ■ In proceedings involving claims for wages by municipal employees or by parties to a contract with a municipality, it is generally held that an ordinary action at law for damages is adequate, and a writ of mandate will be denied. (*Black* v. *City of Santa Monica,* 13 Cal.App.2d 4, 6 [56 P.2d 256] ; *Coombs* v. *Smith,* 17 Cal.App.2d 454, 455 [62 P.2d 380] ; *Northrup* v. *Haynes,* 15 Cal.App.2d 665, 666 [59 P.2d 1056].) As this court has pointed out, "[i]t is settled that mandamus does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract." (*Elevator Operators etc. Union* v. *Newman,* 30 Cal.2d 799, 808 [186 P.2d 1].)

In a few situations involving claims by state or municipal employees for wages the general rule has been relaxed. For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved. (*Cf. Quigg* v. *Evans,* 121 Cal. 546, 553-554 [53 P. 1093] ; *Scott* v. *Boyle,* 164 Cal. 321, 323 [128 P. 941] ; *Dupuy* v. *Board of Education,* 106 Cal.App. 533, 539 [289 P. 689] ; *Gantenbein* v. *City of Long Beach,* 9 Cal.App.2d 726, 729 [51 P.2d 124] ; *Scannell* v. *Murphy,* 82 Cal.App.2d 844, 850 [187 P.2d 790].) In the Scannell case, which also involved a proceeding under section 150 of the San Francisco City Charter for the payment of wages, the court pointed to the necessity for obtaining the approval by several public officials of a demand, without which no right to receive compensation could arise. A similar result was reached in the Gantenbein case.

█ It is argued that an extension of the remedy of mandate to include an action based upon a claim for damages may deny to the municipality the procedural safeguards, such as claim statutes and the right to a jury trial, it would enjoy in the ordinary action at law. Clearly, the remedy of mandate should not be allowed indiscriminately, but, in the present case, the trial court has not extended it beyond established precedent. Accordingly, it was not error to allow the writ.

Finally, the city officials contend that the fiscal provisions of the charter of the city and county do not allow the payment of claims for vacation pay as salary or wages. To compel them by writ of mandate to approve such payments, they argue, would require the violation of the city charter provisions. Furthermore, the argument continues, the petitioners have failed to allege and prove the existence of a fund from which payment of the claims could be made, and thus have failed to establish a case for the issuance of the writ.

Under the procedure established by the charter for the payment of wages and salaries, each department head must prepare in advance of the fiscal year a budget including a detailed analysis of the estimated expenditures for compensation. (§ 69.) The budget must be approved by certain public officials and then submitted to the board of supervisors as a basis for the enactment of an appropriation ordinance. The controller must then allot the funds included in the appropriation to the payment of specific obligations. (§ 72.) The position of the city officials is that the present claims have been included in no budget estimate or allotment, and the controller is precluded from incurring liabilities in excess of any allotment. (§ 72.) They assert that the obligation to pay vacation claims did not arise until after the petitioners had been discharged, and there is no "authority retroactively to certify payrolls for time worked when they were not even employees."

█ The situation is analogous to the one presented when an employee is granted compensation for unused vacation time or for accrued overtime work for which he might have been given compensating time off. His right to receive pay does not arise until the time of his separation from service, and yet, when compensation is paid, it is estimated on the basis of a projection of his services for a period beyond his date of separation equal to his accrued claims. (*Cf.*

*Martin* v. *Henderson,* 40 Cal.2d 583, 593 [255 P.2d 416]; *Pohle* v. *Christian,* 21 Cal.2d 83, 90 [130 P.2d 417].) Here, in the case of all employees, both those who remained in the city and county service and those whose employment was terminated before the effective date of section 151.5 of the charter, no right to receive accumulated vacation pay accrued until the amendment became effective. The legal liability thus created should have been treated as an obligation of the fiscal year 1950-1951. In any event, there is ample precedent for construing the San Francisco charter as authorizing payment of back pay accruing prior to the current fiscal year. (*Cf. Scannell* v. *Murphy, supra; Francis* v. *Leavy,* 131 Cal. App. 620 [21 P.2d 979].)

 The city officials assert, however, that there is no fund presently available to pay the claims. They rely upon the general rule that a public officer may not be compelled to authorize the payment of compensation or issue a warrant when funds are lacking, and the decisions which hold that, in an action for mandate to compel the drawing of a warrant by a public official, allegation and proof of available money are essential elements of the petitioner's case. (*Stevens* v. *Truman,* 127 Cal. 155, 157 [59 P. 397]; *Cramer* v. *Supervisors,* 18 Cal. 384, 385; *State Commission in Lunacy* v. *Welch,* 20 Cal.App. 624, 628 [129 P. 974].)

This contention is well taken. The petition for a writ of mandate does not allege, nor is there any proof, as to the existence of a fund from which payment of the petitioners' claims could be made at the present time, and the existence of such a fund is an essential prerequisite under the charter to making such payments. (§ 72.) However, there is no error in the judgment insofar as it directs the city officials to certify and approve payrolls showing that the petitioners are entitled to receive vacation pay for the periods enumerated. With those legal demands established, it may be presumed that the city officials will pay the claims if funds are available, and if unavailable, that the proper steps will be taken to appropriate the amount required to meet them.

The portion of the judgment which commands the appellants to pay the claims of the petitioners is reversed; in all other respects, the judgment is affirmed. The appellants are to bear the costs of this appeal.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.