TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-1104 |
| of | : | JUNE 24, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| RODNEY O. LILYQUIST<br>Deputy Attorney General | : | |

_____

THE HONORABLE BILL BRADLEY, MEMBER, CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a redevelopment agency reimburse a landowner for property assessments paid to construct a flood control project where former members of the agency told the landowner that they would vote to reimburse him for all or some portion of the assessments from surplus funds that might come into the possession of the agency if the landowner would not formally protest the construction of the project?

CONCLUSION

A redevelopment agency may not reimburse a landowner for property assessments paid to construct a flood control project where former members of the agency told the landowner that they would vote to reimburse him for all or some portion of the assessments from surplus funds that might come into the possession of the agency if the landowner would not formally protest the construction of the project.

1

ANALYSIS

Section 6 of article XVI of the Constitution states:

"The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."

The question presented for analysis is whether this constitutional prohibition is applicable where a redevelopment agency[1] is asked to reimburse a landowner for certain property assessments paid to construct a flood control project. We conclude that it is.

The factual circumstances which we must examine are unusual. In 1978 the landowner received city approval for the development of his property but declined to begin construction. In 1979 the city formed a redevelopment agency with the members of the city council designated as the members of the agency. (See Health & Saf. Code, § 33200.[2] Among the contemplated projects of the agency was the construction of several flood control improvements. (See §§ 33020, 33021, 33032.) In 1981 the city determined that a flood control project in a particular area of the city should be built through formation of an assessment district pursuant to the provisions of the Municipal Improvement Act of 1913 (Sts. & Hy. Code, §§ 10000-10610). The landowner owned more than one-half of the area of land to be assessed for the project. Since redevelopment of his property was still not imminent, the landowner would have protested the formation of the district for such a purpose, except that the members of the agency told him they would vote to reimburse all or some portion of his assessments from surplus funds coming into the possession of the agency. In 1982 the assessment

_____

[1] Although the prohibition is directed at the "Legislature," a redevelopment agency is a creature of statute, the Community Redevelopment Law (Health & Saf. Code, §§ 33000-33855) and as such would be subject to the prohibition. (See *Tevis* v. *City & County of San Francisco* (1954) 43 Cal.2d 190, 196-197; *Estate of Cirone* (1984) 153 Cal.App.3d 199, 206; *Golden Gate Bridge etc. Dist.* v. *Leuhring* (1970) 4 Cal.App.3d 204, 207.)

[2] All references hereafter to the Health and Safety Code are by section number only.

2

district was formed without protest. In 1983 the project was completed and became the property of the local water district. (See Sts. & Hy. Code, § 10109; *San Pablo* v. *East Bay Municipal Utility Dist.* (1977) 75 Cal.App.3d 609, 617.) By 1984 the members of the agency who had made the "reimbursement" statements to the landowner were no longer in office. In 1985 surplus funds became available to the agency. No vote of the members of the agency has ever been taken with respect to reimbursing the landowner for his property assessments.

The Community Redevelopment Law authorizes redevelopment agencies to make payment for previously constructed improvements under specified conditions. Section 33445 states in part:

"When . . . the cost of the installation and construction of the . . . improvement . . . has been . . . paid or provided for initially by the community or other public corporation, the agency may enter into a contract with the community or other public corporation under which it agrees to reimburse the community or other public corporation for . . . all or part of the cost of the . . . improvement . . . by periodic payments over a period of years.

"The obligation of the agency under the contract shall constitute an indebtedness of the agency for the purpose of carrying out the redevelopment project for the project area, which indebtedness may be made payable out of taxes levied in the project area and allocated to the agency under subdivision (b) of Section 33670, or out of any other available funds.[3]

By its terms section 33445 allows reimbursement only to other governmental entities, not private parties such as the landowner here.

The general provisions for the expenditure of funds by a redevelopment agency are contained in section 33622:

"By resolution of the legislative body adopted by a majority vote, any money in the redevelopment revolving fund may be expended from time to time for:

"(a) The acquisition of real property in any project area.

---

[3] "Community" is defined for purposes of section 33445 as a city, county, incorporated group, or other entity which "exercises some local governmental powers." (§ 33002.)

"(b)    The clearance, aiding in relocation of site occupants, and preparation of any project area for redevelopment."

The conditions for payment under section 33622 are not present here.  Reimbursing the landowner for property assessments previously imposed to build a flood control project by another governmental entity does not satisfy the terms of section 33622.

A redevelopment agency is authorized to enter into contracts (§ 33125) with private entities for the construction of public improvements if certain conditions are met (see, e.g., Pub. Contracts Code, § 20688.2), and may pay for its contractual obligations through the issuance of bonds (§§ 33640-33665), taxation (§§ 33670-33674), or the receipt of funds from other sources (§§ 33600-33601).  The contracts of the agency, however, must be "necessary or convenient to the exercise of its powers." (§ 33125, subd. (c).)  Here, the flood control project has long been constructed by another governmental entity and is owned and operated by a third governmental body.  Making a contract now under such circumstances to pay for the costs of construction would not satisfy the requirements of section 33125.

In *County of Riverside* v. *Idyllwild County Water Dist.* (1978) 84 Cal.App.3d 655, a water district argued that it had the authority to enter into a joint-powers agreement with a county to construct sewerage facilities and share the cost thereof.  Such, however, had not been done; instead the district alone built the facilities and attempted to impose a capital cost charge against the county.  The court ruled that the district could not receive the advantages of one course of conduct when it had chosen to act under a different statutory scheme:

"The flaw in the argument is that the alleged agreement on which the district relies is not a joint-powers agreement for the construction of sewerage facilities; it is a user's agreement to pay charges.  For the county to agree to pay an invalid charge would amount to a gift of public funds in contravention of article XVI, section 6 of the California Constitution." (*Id.*, at p. 660.)

In *Golden Gate Bridge etc. Dist.* v. *Leuhring, supra*, 4 Cal.App.3d 204, 212, the Court of Appeal observed that the "gratuitous assumption of an obligation or reimbursement of an expenditure is not generally permissible even though the original obligation or expenditure might have been in furtherance of purposes of the donor entity [citations]."

4

We know of no provision of the Community Redevelopment Law that would sanction payment now by the redevelopment agency, given the facts presented. Nor are we aware of any other legislative enactment that would authorize payment.

It has been suggested, however, that a legal theory, the doctrine of equitable estoppel, does exist for authorizing reimbursement based upon the fact that representations were made by the former agency members to the landowner in 1982.

In analyzing this suggestion, we first note that the Municipal Improvement Act of 1913 allows interested persons to object to the construction of a proposed improvement. Streets and Highways Code section 10311 provides:

"If the protest is against the proposed improvement and the legislative body finds that the protest is made by the owners of more than one-half of the area of the land to be assessed for the improvements, and protests are not withdrawn so as to reduce the protests to less than a majority, no further proceedings shall be taken for a period of one year from the date of the decision of the legislative body on the hearing, unless the protests are overruled by an affirmative vote of four-fifths of the members of the legislative body. Any person making a protest may withdraw the protest, in writing, at any time prior to the conclusion of the protest hearing. The legislative body may confirm, modify, or correct the proposed assessment."

Here the landowner owned more than one-half of the area to be assessed for the flood control project. If he had protested, the protest could have been overruled by four members of the city council so voting. Instead, they made their "reimbursement" statements and the landowner did not protest.

Importantly, it should be observed that the land- owner has benefited from the flood control project. The basis for any assessment levied under the Municipal Improvement Act of 1913 is that the land assessed will "be benefited by the improvement." (§ 10008; see *Fresno County* v. *Malmstrom* (1979) 94 Cal.App.3d 975, 984.) Moreover, the landowner was not in a position to delay the construction until his property was "better suited" to receive the benefit. (See *Potrero Homes* v. *Western Orbis Co.* (1972) 28 Cal.App.3d 450, 458-459.) Here the city council could have overridden the protest when presented.

All that the former agency members stated was that they would vote in favor of reimbursing the landowner for all or some portion of the property assessments

85-1104

paid for the flood control project if surplus funds came into the possession of the agency.[4] No such funds became available during the terms of office of these individuals. The members did not attempt to bind the agency itself to pay any funds (§ 33622) or affect the voting rights of future members of the agency.[5] No promises were broken; no misrepresentation or fraudulent conduct has been alleged.

In *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497, the Supreme Court stated that the doctrine of equitable estoppel could be asserted against governmental agencies in limited circumstances to prevent injustice:

> "The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel."

The basic elements for an equitable estoppel were described as follows:

> "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Id.*, at p. 489.)

---

[4] While the statements of the former members were exceedingly vague, we note that Civil Code section 1611 provides:

> "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth."

[5] We thus need not examine "the general rule that one legislative body cannot limit or restrict its own power or that of subsequent legislatures and that the act of one Legislature does not bind its successors." (*In re Collie* (1952) 38 Cal.2d 396, cert. denied *sub nom. Collie* v. *Heinze* (1953) 345 U.S. 1000; see *County of Los Angeles* v. *State of California* (1984) 153 Cal.App.3d 568, 573.) Neither need we consider whether by carrying out the representations "a method would be afforded by which officials and persons dealing with the agency could evade the law." (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 827; see also *County of Riverside* v. *Idyllwild County Water Dist., supra*, 84 Cal.App.3d 655; 660; *County of Santa Barbara* v. *City of Santa Barbara* (1976) 59 Cal.App.3d 364, 376.)

85-1104

It is apparent that an estoppel argument may not be properly asserted by the landowner here. The elements for an estoppel are not present; the rationale for applying the rule is absent. (See *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 588 [the doctrine """involves fraud and false- hood"""]; *Fullerton Union High School Dist.* v *Riles* (1983) 139 Cal.App.3d 369, 378-380 [the government's action in providing inaccurate advice or information must be proved sufficiently culpable to warrant an estoppel]; see also *Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 28.)

Not only are misrepresentations absent here but applying the doctrine of equitable estoppel would be of no assistance to the landowner under the facts presented. Even holding the former members of the agency to their statements, no vote for payment would have arisen since the agency had no surplus funds while the members were in office.

Hence, we believe that payment now to the landowner by the redevelopment agency would not only contravene statutory law but be inconsistent with any possibly relevant legal theories. We view the request for payment as an "obviously worthless" and "wholly invalid" claim to which the gift of public funds prohibition is applicable. (See *County of San Diego* v. *Hammond* (1936) 6 Cal.2d 709, 720-724; *Orange County Foundation* v. *Irvine Co.* (1983) 139 Cal.App.3d 195, 201; *County of Riverside* v. *Idyllwild County Water Dist., supra,* 84 Cal.App.3d 655, 600; *Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 874; *Golden Gate Bridge etc. Dist.* v. *Leuhring, supra,* 4 Cal.App.3d 204, 212.)

We thus conclude in answer to the question presented that a redevelopment agency may not reimburse a landowner for property assessments paid to construct a flood control project where former members of the agency told the landowner that they would vote to reimburse him for all or some portion of the assessments from surplus funds that might come into the possession of the agency if the landowner would not formally protest the construction of the project.

*****

7

85-1104