Filed 3/14/23  K.R. v. C.N. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| K.R., | C094525 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20210126) |
| v. | |
| C.N., | |
| Defendant and Appellant. | |

Appellant C.N. challenges a civil harassment restraining order granted to his neighbor, respondent K.R.  C.N. contends the order should be reversed because his lawyer was incompetent and the trial judge who heard the matter was biased.  We conclude C.N.'s first contention is without merit and the second forfeited by C.N.'s failure to raise the issue below.  C.N. further contends that K.R. was not entitled to equitable relief due to unclean hands, a defense that is similarly forfeited because it is raised for the first time on appeal.  We will affirm the order.

1

# I. BACKGROUND

The trial court heard evidence on five requests for a civil harassment restraining order between neighbors in El Dorado County and granted only K.R.'s against C.N.

On March 15, 2021, K.R. filed a request for a civil harassment restraining order. K.R. stated: "[C.N.] has constantly and persistently harassed me and my family by screaming insults (white trash, faggot, etc.) and taking advantage of the fact that I have been suffering from a possibly fatal illness by yelling things like 'if you are so sick just hurry up and die.' He also has repeatedly allowed his dogs to run free off of[] his property leading them to cause fatal injuries to our livestock. On one occassion [*sic*] he put a handgun in my face when I came to his front door to tell him that his dogs were running free again. Last Friday, he pulled out a handgun and discharged every round in the magazine while standing along our other neighbor's fence line (while that neighbor was working on the fence)."

On May 20 and 25, 2021, the trial court heard testimony from K.R., C.N., and other witnesses. From this testimony we draw the following facts:

K.R., his wife, and two sons, and C.N. and his girlfriend are neighbors separated by a dirt road in a rural area of Placerville. K.R. moved there a little over 10 years ago. C.N. has lived at his residence for 21 years.

Relations between K.R. and C.N. were relatively friendly for eight years. Things changed two years ago when C.N.'s dog crawled through a culvert and attacked K.R.'s goat, which sustained severe injuries. C.N. and his girlfriend tried to provide medical care for the goat but it died. C.N. offered compensation for the goat or to replace the goat, but K.R. declined. C.N. blocked the culvert so the dog could no longer get through.

About three to six months after the incident, K.R. was shooting on his property to train a dog not to be gun-shy, and the dog got out and ran over to C.N.'s house. K.R. walked to C.N.'s front door to ask for a hand in capturing the dog. Before K.R. could knock, C.N. flung open the door and, according to K.R., held a .45-caliber pistol to

2

K.R.'s forehead. In C.N.'s version of the incident, K.R. was drinking and shooting on his property and came over to C.N.'s property, even though C.N. had told K.R. numerous times not to trespass. C.N. and his girlfriend saw K.R. walk past the front door. C.N. opened the door. C.N. had retrieved a .45-caliber handgun from his gun safe and was holding it at his side. K.R. was not armed, as far as C.N. knew. C.N. asked K.R. what he was doing, and K.R. replied he was looking for his dog. C.N. told K.R. to get his dog and get off the property, and K.R. did.

K.R. called the Sheriff's Department. Sheriff's deputies interviewed C.N. and K.R. The deputies asked K.R. if he wanted to file felony charges against C.N. K.R. said that he did not want to ruin C.N.'s life; he just wanted a record of the incident.

After that incident, friendly relations ended. C.N. would drive fast down the dirt road between their houses to scatter dust on K.R.'s house, make obscene gestures, and call K.R.'s family members names, including K.R.'s children (C.N. denied any name-calling).

K.R. also observed an incident a few months before the trial where C.N., during a dispute with other neighbors about their dogs, walked to their fence line and fired his .45-caliber pistol multiple times into the ground. According to C.N., he was firing blanks.

In ruling on K.R.'s request for a civil harassment restraining order against C.N., the trial court concluded that there was clear and convincing evidence that C.N. assaulted K.R. with a firearm. The court further noted that in a videotape played at the hearing C.N. could be heard cursing and yelling at his neighbors, yet C.N. testified he did not recognize his own voice. The court observed that this conduct alone would be insufficient for a restraining order, but C.N. had also assaulted K.R. The court found inexplicable and "just recalcitrant" that, with the "restraining orders going back and forth," C.N. went to the fence line and fired his handgun multiple times. The court noted that C.N. said the rounds were blanks, but the court observed that C.N. "wasn't credible."

The trial court issued a civil harassment restraining order against C.N., directing him not to harass or contact K.R. or his family, and "not be on the property line" to harass K.R. or his family. The court ordered C.N. to stay at least 100 yards from K.R. and his family and from their home up to C.N.'s property line.

C.N. filed a timely appeal.[1]

## II. DISCUSSION

A.    *C.N.'s Opening Brief*

As an initial matter, we address numerous deficiencies in C.N.'s opening brief.

The opening brief fails to comply with California Rules of Court, rule 8.204(a)(2)(C), which requires "a summary of the significant facts limited to matters in the record." C.N. has made no effort to fairly summarize the evidence presented. His version of the facts is entirely one-sided. He simply ignores evidence that does not support his position. (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1530-1531 (*Davenport*) [appellant "proceeds to recite the evidence in a fashion favorable to her"].) Indeed, C.N.'s statement of facts makes no mention of his armed confrontation with K.R. or C.N. firing his handgun multiple times at the fence line of another neighbor, which the trial court indicated was determinative in its decision to issue the restraining order. An appellant's attempt to "merely reargue the 'facts' as [he] would have them . . . manifests a treatment of the record that disregards the most fundamental rules of appellate review." (*Id.* at p. 1531.) "[S]uch 'factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [the appellant] at the trial level, contrary to established precepts of appellate review. As such, it is doomed to fail.' " (*Ibid.*)

---

[1]  K.R. failed to file a brief.

In addition, many of the facts are stated without citation to evidence in the record. "Statements of fact that are not supported by references to the record are disregarded by the reviewing court." (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947; see *Fierro v. Landry's Restaurant Inc.* (2019) 32 Cal.App.5th 276, 281, fn. 5.) This principle extends to any portion of an appellate brief, including argument. (*Alki Partners, LP v. DB Fund Services* (2016) 4 Cal.App.5th 574, 590, fn. 8.)

Lastly, factual statements in the argument section of C.N.'s opening brief cite his memorandum in support of a petition for a writ of supersedeas, which this court denied. The memorandum is not in the trial court record and C.N. made no request to add it to the appellate record, nor did he ask us to judicially notice it. "As a general rule, documents not before the trial court cannot be included as part of the record on appeal." (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 [appellant's brief "may not rely upon matters which are not part of the record on appeal"].) Nor is the memorandum a proper subject of judicial notice, even if it appears in our own files. (See Evid. Code, § 459.) "Matters set forth in points and authorities are not evidence." (*Alki Partners, LP v. DB Fund Services, supra*, 4 Cal.App.5th at p. 590.)

B.     *Ineffective Assistance of Counsel*

C.N. asserts reversal is required because he received ineffective assistance from his trial counsel, who C.N. claims failed to prepare for trial, introduce relevant evidence, call additional witnesses, object to K.R.'s evidence, and make an opening statement.

We express no opinion on the effectiveness of C.N.'s counsel but instead note that a party to a civil action is not entitled to reversal based on ineffective assistance of counsel. (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978 [declining to address charges that counsel was incompetent, because "we are aware of no authority, and counsel has cited us none, which would permit a trial or appellate court to grant a retrial to an unsuccessful litigant in a civil case . . . on the grounds of incompetency of

5

counsel"]; see *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1574-1575 [" '[T]he general rule is that there is no due process right to counsel in civil cases' "]; *In re Grunau* (2008) 169 Cal.App.4th 997, 1003 ["In a civil case, attorney negligence may be remediable by a malpractice action, and it may be better to relegate the aggrieved litigant to that remedy than to impair the finality of appellate judgments on the ground of counsel's deficient performance"].) Like the appellant in *Chevalier*, C.N. selected his own private counsel to represent him in a civil case and thus is not entitled to reversal on the ground that his counsel was ineffective. (*Chevalier, supra*, at p. 979.)

Accordingly, we reject C.N.'s assertion that reversal is required because he received ineffective assistance of counsel. "Indeed, the general rule is that attorney neglect in civil cases, if any, is imputed to the client." (*In re Marriage of Campi, supra*, 212 Cal.App.4th at p. 1575.)

## C.     Judicial Bias

Next, C.N. contends the trial judge was biased, accusing her of prejudice against "rural" residents who own guns, and listing various occurrences during the hearing that supposedly demonstrated bias.

We find no indication in the record or C.N.'s brief that this issue was raised in the trial court. When faced with claims of judicial bias for the first time on appeal, the court in *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210 said: "Bias and prejudice are grounds for disqualification of trial judges. ([Code Civ. Proc.,] § 170.1, subd. (a)(6).) And if judges fail to recuse themselves, there is a statutory procedure to litigate the issue. ([Code Civ. Proc.,] § 170.3.) [Appellants] did not take advantage of these procedures. . . . Moreover, [appellants] did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself." (*Id.* at p. 1218; see also *People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151 [" 'It is too late to raise the issue [of judicial bias] for the first

6

time on appeal' "].)

We similarly conclude that, by failing to object "at the earliest practicable opportunity" (Code Civ. Proc., § 170.3, subd. (c)(1)), C.N. forfeited the right to pursue the issue on appeal. (See *In re Steven O.* (1991) 229 Cal.App.3d 46, 55 [Code Civ. Proc., § 170.3's "promptness requirement is not to be taken lightly, especially when the party delays in challenging the judge until after judgment. Otherwise, a defendant can sit through a first trial hoping for an acquittal, secure in the knowledge that he can invalidate the trial later if it does not net a favorable result"].)

D.     *Unclean Hands*

Lastly, claiming that K.R. "is an instigator of much of the ill-will between the parties," C.N. asserts that the restraining order should be reversed under the doctrine of unclean hands.

Here, as in *Scannell v. Murphy* (1947) 82 Cal.App.2d 844, "this issue was not presented to the trial court, was not involved at the trial, and no finding[ was] made on it." (*Id.* at p. 849.) It is well-settled "that the 'unclean hands' doctrine must be raised in the trial court to be available as a defense, and cannot, as here, be raised for the first time on appeal." (*Ibid.*; see also *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 355 [failure to properly raise unclean hands doctrine in the trial court forfeits or waives the issue on appeal]; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1059 [same]; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 726; *Sears, Roebuck & Co. v. Blade* (1956) 139 Cal.App.2d 580, 594.) Unclean hands " 'must be pleaded or called to the attention of the trial court in order that it may pass on the defense and also to permit the person against whom it is sought to be applied the opportunity to present such evidence as might bear on that issue.' " (*Marshall v. Marshall* (1965) 232 Cal.App.2d 232, 253; see *Moriarty v. Carlson* (1960) 184 Cal.App.2d 51, 57 [it would be "manifestly unfair" to apply the doctrine without giving the opposing party an opportunity to respond].) In sum,

7

"[unclean hands] may not be litigated on . . . appeal."  (*Scannell v. Murphy, supra*, at p. 849.)

Therefore, we reject C.N.'s attempt to raise the unclean hands doctrine for the first time on appeal.

### III.  DISPOSITION

The order is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

BOULWARE EURIE, J.

8