559 F.2d 1165
 SHOWCASE REALTY, INC., a corporation, Dan Patch Realty,
Westco Realty, Inc., a corporation, Pacific National Bank of
Washington, a corporation, Washington Federal Savings & Loan
Association, a corporation, Robinson Realty & Insurance,
Claimant and Third-Party Plaintiffs, Appellants,
v.
M. K. WHITTAKER and Ann S. Whittaker, his wife, and the
marital community composed thereof, and J. W. Oldenburg and
Josephine Oldenburg, his wife, and the marital community
composed thereof, Third-Party Defendants, Appellees.
 No. 76-1665.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 26, 1977.
 
 David G. Shenton, Case, Pruzan, Kovarik & Shulkin, Seattle, Wash., argued, for third-party plaintiffs, claimant and appellants.
 Douglas W. McQuaid, Charles E. Silveg, Aiken, St. Louis & Silveg, Seattle, Wash., argued, for third-party defendants, appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before BARNES and TRASK, Circuit Judges, and BURNS,* District Judge.
 BARNES, Senior Circuit Judge:
 
 
 1
 The purchaser (Professional Manivest, Inc.) of two apartment complexes in Snohomish County, Washington, filed a complaint for interpleader (based upon diversity of citizenship of claimants), when faced with conflicting requests for payment. The claimants were the real estate brokers (appellants Showcase Realty, Inc., Westco Realty, Inc., and Robinson Realty & Insurance) who asserted that they were entitled to commission from the equity payments pursuant to the terms of two written contracts (the initial "Earnest Money Agreement" with Messrs. and Mrs. Whittaker and Oldenburg, and a subsequent letter-agreement regarding commissions with the sellers' corporation, W. O. Corporation[1]), and the Pacific National Bank of Washington ("the Bank"), to whom the sellers had pledged and assigned any and all interest in the contract rights.
 
 
 2
 The brokers filed a third party complaint seeking to establish that the sellers were also personally liable for the commissions. In the Earnest Money Agreement signed by the sellers and dated October 12, 1970, there was standardized language to the effect that the sellers agreed to pay the brokers a commission. (Clerk's Record ("C.R.") at 102). In the blank wherein the amount of commission was to be filled in, one of the sellers (Whittaker) placed the words "PER LETTER." A subsequent letter-agreement, dated November 10, 1970, contained the amount and manner of payment of the commissions but was only signed by W. O. Corporation through Messrs. Whittaker and Oldenburg in their capacities as officers of the corporation. In Mr. Whittaker's affidavit, he states that the sellers were asked to sign an agreement to personally bind themselves to the payment of the commission, but the sellers unequivocally refused to do so. (C.R. at 100-103). In the affidavit of Glenn Moormeier, one of the realtors, it is stated that Whittaker suggested that the sellers would sign the agreement as W & O Associates, the partnership of Messrs. Whittaker and Oldenburg. However, allegedly due to a mistake by personnel in Moormeier's office, the document was prepared by Moormeier's secretary for signature as W. O. Corporation. (C.R. at 119). No such named corporation exists.
 
 
 3
 It was established that prior to the sale of the properties, Messrs. Whittaker and Oldenburg had pledged their interests in any and all contract rights to the Bank as security for their various debts. (C.R. at 73 and 84).
 
 
 4
 Prior to trial, the brokers and the Bank settled their claims. The brokers received $25,000 (the amount of the commission was $120,000), and the interpleader action was dismissed. (C.R. at 141). The sellers moved for summary judgment of the remaining third party complaint on the grounds that, as the Washington Statute of Frauds requires that a contract for payment of real estate commissions be signed by the party to be charged therewith, the lack of signatures by the sellers in their individual capacities in the letter-agreement automatically precluded the possibility of an enforceable contract against them. (C.R. at 105-110). The district court agreed, finding that the Earnest Money Agreement taken with the letter-agreement satisfied the statute of frauds only as to the corporation and not as to the individual third party defendants, the sellers. The brokers appeal the grant of the summary judgment. We affirm.
 
 The appellants raise two questions herein:
 
 5
 1. Does the Washington Statute of Frauds bar their claim for commission, and
 
 
 6
 2. Is the Statute of Frauds applicable to this case?
 
 
 7
 * The claim against the sellers, individually, is precluded by the Washington Statute of Frauds.
 
 
 8
 Section 19.36.010(5) of the Washington Revised Code provides that:
 
 
 9
 "In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say:
 
 
 10
 (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."
 
 
 11
 From the clear language of the statute, for the sellers to be individually liable there must be a written contract to that effect which is signed by them. The Earnest Money Agreement, by itself, is not sufficient as it does not include the amount of the commission to be paid, a fatal contractual flaw under the Washington Statute of Frauds. Black v. Milliken, 143 Wash. 204, 255 P. 101 (1927); Houtchens Co. v. Nichols, 81 Wash. 238, 142 P. 674 (1914); Cushing v. Monarch, 75 Wash. 678, 135 P. 660 (1913). While reference can be made to the letter-agreement dated November 10, 1970[2] to ascertain the amount, cf. Sams v. Olympia Holding Co., 153 Wash. 254, 279 P. 575 (1929), that agreement only obligates a non-existent entity, the W. O. Corporation, and not the sellers individually as their signatures on that contract are clearly only in their capacities as corporate agents.[3] Thus, because the letter-agreement is not properly signed by the sellers, the brokers cannot overcome the statute of frauds to succeed in their claim against the sellers individually. The district court properly found the appellants' third party complaint precluded by the statute of frauds.II
 
 
 12
 The Washington Statute of Frauds is applicable despite the brokers' claims of fraud.
 
 
 13
 The appellants urged the court below to pierce the corporate veil because of the alleged fraud by the sellers. They alleged that the sellers failed to disclose the fact that the sellers had previously assigned any rights to the equity payments to the Bank and thus the W. O. Corporation (or W. O. Inc.) had no right to assign any funds. However, the appellants' fraud argument fails for two reasons.
 
 
 14
 First, the appellants themselves drafted the letter-agreement and now claim that it should be read to hold the sellers individually liable as opposed to holding the W. O. Corporation liable as the contract clearly reads. The sellers, in turn, deny any such intention on their part, and state they consistently declined to assume any individual or personal liability. It is an established rule of contract law that mistakes in agreements are to be interpreted against the party who drafts the contract and creates the mistake or ambiguity, § 236(d) Restatements of Contracts; 3 Corbin on Contracts § 559 (1960 ed.); 4 Williston on Contracts, § 621 (3rd ed. 1961).
 
 
 15
 Second, even if we accept appellants' allegations of fraud, it has been clearly established under Washington law, despite public policy arguments to the contrary, that the requirements of the Washington Statute of Frauds cannot be circumvented on the ground of fraud by the seller. Gertz v. Schaeffer, 38 Wash.2d 639, 231 P.2d 273 (1951); American, Inc. v. Bishop, 29 Wash.2d 95, 185 P.2d 722 (1947). As noted by the Supreme Court of Washington in Forland v. Boyum, 53 Wash. 421, 102 P. 34 (1909), "Such contracts are held void by force of the statute, and the rights of the parties can never be determined by resort to equitable principles." Thus, the statute of frauds is clearly applicable to this case.
 
 
 16
 The decision below is AFFIRMED in its entirety.
 
 
 
 *
 Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Apparently, there was no entity named W. O. Corporation. However, there was an entity called W. O. Inc. of which Messrs. Whittaker and Oldenburg were the principal shareholders
 
 
 [2]
 The letter-agreement was dated "11/10/70" but was apparently signed on "11/11/70" (C.R. at 122)
 
 
 [3]
 We assume herein, without deciding the issues, because the parties to the letter-agreement have each so assumed: (a) that the letter-agreement dated November 11, 1970, was the "PER LETTER" document referred to in the Earnest Money Agreement, and (b) that the "PER LETTER" reference to a then non-existent document could legally be incorporated by such reference into the Earnest Money Agreement, upon its execution at a subsequent date