UNITED STATES of America, Plaintiff,

v.

David LOWY, Roslyn Lowy, Nassau Suffolk Lumber & Supply Co., City of New York Parking Violations Bureau, John Doe # 1 Through John Doe # 2, such names being fictitious and unknown to plaintiff, the persons or parties intended being tenants, occupants, persons, corporation, or other legal entities, if any, having or claiming an interest in or lien upon premises described in complaint, Defendants.

No. CV–86–0287.

United States District Court,
E.D. New York.

Jan. 19, 1989.

Thomas A. McFarland, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Marvin Neiman, New York City (Ephrem Wertenteil, on brief), for defendants.

GLASSER, District Judge:

The Government moves for summary judgment in this action to collect on two Small Business Administration ["SBA"] guaranties and to foreclose on a mortgage. Defendants oppose the motion and also cross-move for summary judgment. For reasons stated below, the Government's motion is granted and defendants' motion is denied.

FACTS

On or about July 24, 1975, Adria Industries Corportion ("Adria"), through its president, defendant David Lowy, executed and delivered to the SBA a Note ("the 1975 Note") obligating it to pay $100,000 plus interest pursuant to a schedule set forth in the Note. As collateral for the 1975 Note, defendants David and Roslyn Lowy executed a Guaranty ("the 1975 Guaranty) and a mortgage on a residence located at 112–21 69th Road, Forest Hills, New York 11375. By executing the Guaranty, defendants agreed that

> [i]n case [Adria] shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of [the 1975 Note], [defendants], immediately upon the written demand of [the SBA], will pay to [the SBA] the amount due and unpaid by [Adria] as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the [defendants]. [The SBA] shall not be required, prior to any such demand on, or payment by, the

[defendants], to make any demand upon or pursue or exhaust any of its rights with respect to any part of the collateral.

In addition, the 1975 Guaranty contains language whereby defendants "waiv[e] any notice of the incurring by [Adria] at any time of any of the Liabilities, and waiv[e] any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities[.]" Also, the 1975 Guaranty states that the defendants grant to the SBA "full power, in its uncontrolled discretion and without notice to [defendants] ... to deal in any manner with the Liabilities and the collateral[.]" The Note then presents a nonexhaustive list of the SBA's powers to deal with the liabilities and collateral, including:

(d) To consent to the ... release of all or any part of the collateral, whether or not the collateral, if any, received by [the SBA] upon any such ... release shall be of the same or of a different character or value than the collateral surrendered by the [SBA];

(e) In the event of nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as [the SBA] may elect, at any public or private sale or sales ... without demand, advertisement or notice of the time or place of sale or any adjournment thereof (the [defendants] hereby waiving any such demand, advertisement and notice to the extent permitted by law) ... or to forbear from realizing thereon, all as [the SBA] in its uncontrolled discretion may deem proper ... such powers to be exercised only to the extent permitted by law.

Following this, the Note states that the "obligations of the [defendants] shall not be released, discharged or in any way affected ... by reason of any action [the

SBA] may take or omit to take under the foregoing powers."

On or about June 29, 1976, Adria, again acting through its president, Mr. Lowy, executed and delivered to Citibank, N.A. a Note ["the 1976 Note"] obligating Adria to pay the sum of $270,000 plus interest by making payments pursuant to a schedule set forth in the 1976 Note. As collateral security for the 1976 Note, defendants executed a Guaranty of payment of that Note ("the 1976 Guaranty"). The 1976 Guaranty contained language identical to that quoted above.

Adria defalted in repaying both notes, and, on or about March 17, 1980, was placed in Chapter 7 Bankruptcy by order of the United States Bankruptcy Court for the Eastern District of New York. Subsequent to Adria's default on the 1976 Note, Citibank assigned that Note to the SBA.

In letters dated March 18, 1980 and February 1, 1983, the SBA demanded that defendants honor their guaranties by immediately paying the entire unpaid balance of the principal sums due under the 1976 and 1975 Notes, respectively. Defendants refused to do so.

The Government now seeks summary judgment in this action brought on the 1975 and 1976 Guaranties and to foreclose the mortgage securing the 1975 loan. Defendants cross-move for summary judgment. The court finds that there is no genuine issue as to any material fact and that the Government is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Therefore the court grants the Government's motion and denies defendants' motion.

DISCUSSION

I. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants interpose several objections to the Government's motion for summary judgment. Each of these objections is meritless.

A. Statute of Limitations

Defendants claim that genuine issues of fact exist as to whether or not this action is time-barred.

■ Both sides agree that, to the extent this is an action for money based on the Guaranties,[1] the six-year statute of limitations set forth in 28 U.S.C. § 2415(a) applies.[2] The Government argues, correctly, that its demand letters triggered the running of the statute, and that the action therefore is timely. *United States v. Alessi*, 599 F.2d 513, 515 & n. 4 (2d Cir.1979) (per curiam) (under § 2415(a), cause of action accrues when Government gives mortgagor notice of election to accelerate debt). Defendants speculate, however, that the Government *may* have sent earlier demand letters than the ones in evidence, so that the action *may* have been filed after the six-year limitations period had run. Defendants claim that they are entitled to discovery on this issue.

The court is puzzled by defendants' asserted need for discovery of documents which, if they existed, would be in defendants' possession. Defendants have offered no earlier demand letters or any credible reasons for believing that such letters exist, and therefore the court finds that there is no genuine issue as to the existence of such letters.

Defendants argue, alternatively, that the action may be time-barred because the Government may have waited an "unreasonable" period of time after Adria's defaults to demand repayment from the defendants. Therefore, they argue that they are entitled to discovery as to when Adria first defaulted in its payments.

■ Defendants cite only one case for the proposition that demand must be made within a "reasonable" time, and that case, *Nyhus v. Travel Management Corp.*, 466 F.2d 440–54 (D.C.Cir.1972), had nothing to do with the relevant statute of limitations, 28 U.S.C. § 2415(a). Given the utter lack of legal authority for doing so, this court refuses to import a "reasonable" time requirement into § 2415(a).

B. Defendants' Defenses Under N.Y.U.C.C. Law § 9–504(3) (McKinney 1964 & Supp.1988)

1. *SBA's Failure to Dispose of Collateral in "Commercially Reasonable" Manner*

Defendants claim that the Government violated its duty under § 9–504(3) of the U.C.C.[3] to dispose of collateral—*i.e.*, Adria's assets, including its machinery and inventory—in a "commercially reasonable" manner.[4] Specifically, defendants claim

---

1. The Government, citing *Cracco v. Cox*, 66 A.D.2d 447, 414 N.Y.S.2d 404 (2d Dep't 1979), argues that, even assuming that its action based on the Guaranties is time-barred, no statute of limitations applies to its mortgage foreclosure action. In view of its holding that the action on the Guaranties is not time-barred, the court need not reach this issue.

2. Section 2415(a) states, in relevant part:
   [E]xcept as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues[.]

3. N.Y.U.C.C. Law § 9–504(3) (McKinney 1964 & Supp.1988) states, in relevant part:
   Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place *and terms* must be *commercially reasonable.*
   *Id.* (emphasis added).

4. The defenses which defendants assert under U.C.C. § 9–504(3) assume the applicability of New York's U.C.C. law to the dispute. The court agrees with the defendants that state commercial law governs this dispute.
   *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), cited by defendants, persuasively supports this contention. There, the Supreme Court, following *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), held that "federal law governs questions involving the rights of the United States arising under nationwide federal programs." *Kimbell Foods*, 440 U.S. at 726, 99 S.Ct. at 1457. Where the statutes authorizing such federal programs do not specify the appropriate rule of decision, federal common law fills the gaps. *Id.*, 440 U.S. at 727, 99 S.Ct. at 1457. In *Kimbell Foods*, the Court held that, in determining the relative priority of private liens versus government liens held under SBA and FHA loan programs, it was not necessary to craft a uniform federal rule. "Because the state commercial codes 'furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s],' ... we decline to override intricate state laws of general

(a) that the prices obtained for Adria's machinery and equipment ($310,113.60) and inventory ($241,460.45) in the Chapter 7 liquidation auction were far below the value which the company would have fetched if sold as a going concern (allegedly "well in excess of $3 million") or even piecemeal (allegedly "well in excess of $1.5 million") (Lowy Aff. ¶¶ 18–20); and

(b) that the SBA unreasonably "stipulated away" its right to the proceeds from Adria's inventory in an agreement which settled an adversary proceeding brought by Adria's bankruptcy trustee. (Lowy Aff. ¶¶ 28–31).

■ The court finds that defendants waived their rights under U.C.C. § 9–504(3) by agreeing to the unconditional waivers contained in the Guaranties, which are quoted at the outset of this opinion. *See United States v. McAllister*, 661 F.Supp. 1175, 1177 (E.D.N.Y.1987) (identical language in SBA guaranty operated to waive

applicability on which private creditors base their daily commercial transactions." *Id.*, 440 U.S. at 729, 99 S.Ct. at 1459 (citation omitted). *Kimbell Foods* also specifies the rule of decision here. *See also United States v. McAllister*, 661 F.Supp. 1175, 1177 (E.D.N.Y.1987) (McLaughlin, J.) (applying New York version of U.C.C. as federal rule of decision in action on an SBA guaranty).

5. Defendants cite only two authorities for the proposition that their "commercially reasonable" defense could not be waived as a matter of law. The first, *United States v. Hunter*, 652 F.Supp. 774 (D.Kan.1986), reached its decision by applying the Kansas commercial code, not the New York commercial code as interpreted by New York courts.

Defendants' other case, *United States v. Willis*, 593 F.2d 247 (6th Cir.1979) held that, as a matter of federal common law, the court would not read an unconditional SBA loan guaranty as waiving the defendants' rights under § 9–504(3). *Willis*, 593 F.2d at 255. Research has disclosed no federal district court or appellate decisions in the Second Circuit adopting the *Willis* rule.

Moreover, this court declines to adopt the *Willis* rule, for the reasons stated by the Supreme Court when it adopted state U.C.C. law as the federal rule of decision in *Kimbell Foods*, *supra*. *See* n. 4, *supra*. There, the Court considered "the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Kimbell Foods*, 440 U.S. at 729, 99 S.Ct. at 1459. The Court noted that because "the ultimate consequences of altering settled commercial practices are so

defense of commercial unreasonableness under New York version of U.C.C. § 9–504(3)).[5]

### 2. SBA's Failure to Notify Defendants of Sale

■ Defendants claim that, under U.C.C. § 9–504(3),[6] the SBA should have notified them of the liquidation sale of Adria's assets. The court finds that the 1975 and 1976 Guarantees each contain a specific waiver of notice: "The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and *without notice to the [defendants]* ... to deal in any manner with ... the collateral[.]" Elsewhere, the Guaranties state that notice is waived "to the extent permitted by law."[7] Defendants offer no authority for ignoring these express waivers of notice, and the court concludes that the waivers should be given effect. *See United States v. McAllister,*

difficult to foresee, we hesitate to create new uncertainties, in the absence of careful legislative deliberation." *Id.*, 440 U.S. at 739–40, 99 S.Ct. at 1464–65. The Court held that where it had not been furnished "any concrete reasons for rejecting well-established commercial rules which have proven workable over time ... the prudent course is to adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accomodation." *Id.*, 440 U.S. at 740, 99 S.Ct. at 1464. This prudent approach is equally applicable to piecemeal deviations from the New York commercial code— which is what adoption of the *Willis* rule here would amount to.

6. N.Y.U.C.C. Law § 9–504(3) (McKinney 1964 & Supp.1988) states, in relevant part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

7. Since the court rejects defendants' claim that notice cannot be waived "as a matter of law," it follows that it must also reject defendants' logically inseparable claim that the Guaranties themselves do not provide for waiver of notice because they state that the guarantor waives notice "to the extent permitted by law."

661 F.Supp. at 1177–78 (identical language in SBA guaranty operated to waive defense of lack of notice of sale of collateral under New York version of U.C.C. § 9–504(3)); *Tilden Financial Corp. v. Neuberg,* 140 A.D.2d 690, 528 N.Y.S.2d 1006 (2d Dep't 1988) (assuming *arguendo* that equipment lease secured by personal guarantee was a security agreement subject to U.C.C. § 9–504(3), court would give effect to language in guarantee expressly waiving right to notice of sale of equipment). *Accord First National Park Bank v. Johnson,* 553 F.2d 599 (9th Cir.1977) (giving effect to unconditional waiver of notice of sale of collateral).

### C. Defendants' Contractually–Based Defense

■ Defendants quote language from the Guaranties stating that the guarantors are not responsible for "deterioration, waste, or loss by fire, theft or otherwise" of the collateral caused by the "willful act of [the] lender." This language appears to be limited to physical damage to or loss of the collateral—not the sale of it for an inadequate price. To read this language as placing some sort of requirement on the SBA to force the bankruptcy trustee to get the best price, or even a "reasonable" price, in a liquidation sale of the collateral would nullify much of the contractual language quoted at the outset of this opinion, and would violate the rule that a contract is to be read so as to give effect to all of its parts.

### D. Defendants' "Regulation B" Defense

Defendants rely on a section of "Regulation B," 12 C.F.R. § 202.7(d), issued pursuant to the Equal Credit Opportunity Act ["ECOA"], 15 U.S.C. § 1691 *et seq.,* for the proposition that the Guarantees cannot be enforced because the SBA was not entitled to obtain defendants' signatures in the first place. The regulation states that a creditor shall not require the signature of an additional person on a credit instrument if the applicant alone (Adria) could meet *the creditor's standards of creditworthiness* for the amount and terms of the loan requested. 12 C.F.R. § 202.7(d)(1). If, however, the personal liability of another party is required to support the extension of credit, a guarantor can be required; but the creditor cannot require the applicant's spouse to be that guarantor, *id.,* § 202.7(d)(5), unless the spouse's signature is necessary, or reasonably believed to be necessary, in order to make the property being offered as security available to satisfy the debt in the event of default. *Id.,* § 202.7(d)(4). Moreover, the creditor must apply the above rules to the guarantors just as it would to the applicant itself. *Id.,* § 202.7(d)(6)). Thus, the creditor cannot require the signature of the guarantor's spouse (*i.e.,* Mrs. Lowy) where it could not require the signature of the applicant's spouse.

Defendants claim that under Regulation B, the SBA could not require Mr. Lowy to sign the guaranty without first ascertaining that—under some standard not specified by defendants—Adria represented too great a credit risk to obtain the loan without that guaranty. Moreover, defendants assert that even if requiring Mr. Lowy's signature was proper, requiring Mrs. Lowy's signature was not. Without citing any relevant authority, defendants argue that summary judgment should be denied so that they can engage in discovery to determine whether the SBA conducted an individualized analysis of Adria's creditworthiness which justified obtaining the Lowy's guarantees.

■ Defendants have misread Regulation B, and have raised no genuine issue of material fact concerning the SBA's compliance with that regulation. The Regulation itself does not forbid a creditor from seeking guarantors, but only forbids it from doing so *when its own "standards of creditworthiness" do not require it.* The Government properly contends that under the SBA's own "standards of creditworthiness" these high-risk loans to economically marginal small businesses *always* require guarantors, and that the SBA has the authority—in fact, the duty—to acquire such security. As the Government points out, SBA loans are high-risk loans which are

statutorily limited to businesses that could not otherwise receive credit. 15 U.S.C. § 636(a)(1). Moreover, the SBA is statutorily required to seek reasonable security. 15 U.S.C. § 636(a)(6) and 13 C.F.R. § 122.2(c).

■ As for the SBA's requirement that Mrs. Lowy sign the Guaranties, the Government persuasively argues that Mrs. Lowy's signature was necessary on the 1975 Guaranty because she had sole title to the house which was mortgaged to secure the loan, and on the 1976 Guaranty to prevent fraudulent transfers from Mr. Lowy to her. *See* 12 C.F.R. § 202.7(d)(4) (described *supra*).

Defendants do not assert that the SBA discriminated against Adria or them by requiring guarantees that it did not ordinarily require.[8] Rather, they appear to be challenging the SBA's authority to formulate its own creditworthiness standards so as to routinely require the sorts of guaranties obtained in this case. They offer no legal basis for this challenge to the SBA's authority, and, on its face, Regulation B affords none. The discovery they seek does not pertain to any fact material to this litigation.

Accordingly, the court finds that defendants have not raised a genuine issue of any material fact justifying denial of the Government's summary judgment motion.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the ground that they never guaranteed the 1976 Note to Citibank, and that, had the proceeds of the liquidation sale been properly applied only to the amounts owing under the 1975 Note, the deficiency would have been satisfied. Consequently, they claim that they owe nothing and that summary judgment should be granted in their favor.

■ Defendants' sole basis for asserting that they never guaranteed the 1976 Note is the fact that the 1976 Guaranty signed by them mistakenly refers to the Note as having been made on May 6, 1976 (the date the Guaranty was made), rather than on June 29, 1976, the true date of the making of the Note. Defendants have no explanation as to what it was they were guaranteeing when they signed the Guaranty on May 6, 1976, nor can they explain why the lender, amount and interest of the Note referred to in that Guaranty are exactly equal to the lender, amount and interest of the June 29 Note.

Defendants do not dispute that a $270,000 loan was made to Adria on June 26, 1976. They simply want this court to hold that they need not honor their guaranty of that loan because the guaranty mistakenly refers to the loan as having been made on May 6. The court will not permit defendants to escape their obligations on the basis of a trivial clerical error. Accordingly, defendants' cross-motion for summary judgment must be denied.[9]

### *Conclusion*

The Government's motion for summary judgment is granted, and defendants'

---

**8.** As stated above, Regulation B was promulgated pursuant to the ECOA, a statute intended in part to prohibit discrimination in consumer credit decisions. *See Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir.1982) ("The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit.") (citation omitted). *See also Brothers v. First Leasing*, 724 F.2d 789, 791, 793–94 (9th Cir.), *cert. denied*, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984).

**9.** Defendants rely on *Showcase Realty Inc. v. M.K. Whittaker*, 559 F.2d 1165 (9th Cir.1977) for the proposition that a mistake in a contract must be construed against the drafter. Their description of the case suggests that the drafting mistake involved in that case was in designating a contracting party as "W & O Corporation" instead of "W & O Associates." Thus, defendants' brief leaves the impression that important contractual rights can turn on tiny mistakes in drafting an agreement. That is a gross misrepresentation of *Showcase Realty*. Rather, *Showcase Realty* (applying Washington law) held that a guarantee designating a non-existent corporation (mistakenly called the "W & O Corporation") as guarantor could not be construed as binding two individuals. Because the parties sought to be charged (the individuals) did not sign the guarantee, the guarantee was void under the statute of frauds.

cross-motion for summary judgment is denied.

SO ORDERED,