**UNITED STATES of America, Plaintiff,**

**v.**

**Bernard BOOZER, "John Doe" and "Mary Roe" and others, such names being fictitious, it being the intention of the plaintiff to designate any occupants of the mortgaged premises who may have any interest in same, Defendants.**

**No. 88–CV–830.**

United States District Court,
N.D. New York.

March 7, 1990.

Frederick J. Scullin, U.S. Atty., N.D. N.Y., Syracuse, N.Y. (William H. Pease, Asst. U.S. Atty., of counsel), for U.S.

Bernard Boozer, Mexico, N.Y., pro se.

## MEMORANDUM–DECISION & ORDER

### MUNSON, District Judge.

Before the court at this time are defendant's motion to dismiss and the United States' motion for a protective order and for summary judgment. The court heard argument on February 16, 1990 in Syracuse, New York. For the reasons stated in this opinion the court denies defendant's motion to dismiss and grants the United States' motion for summary judgment.[1]

The basic facts in this case are not in dispute. The United States seeks to recover for defendant's default on two promissory notes which the defendant signed with the Department of Housing and Urban Development (HUD). The first note was executed on November 7, 1980 in the amount of $28,100. The second note was executed on March 3, 1981 in the amount of $45,300. Both loans were to be paid in regular monthly installments and contained acceleration clauses which permitted the government, at its option, to demand payment of the note's total unpaid principal if any installment was unpaid at the time the next installment became due. Plaintiff's Memorandum of Law, Exhibit A & B, Doc. 20. The first loan payment on the November 7, 1980 loan was due December 1, 1980. The first loan payment on the second loan was due April 1, 1981. Defendant admits that he never made any of the required payments under either loan.[2]

On March 20, 1984, HUD sent defendant a letter informing him that it was accelerating on the first loan for non-payment. On August 1, 1985, HUD sent defendant a similar letter with regard to the second loan. Defendant contends that he never received either letter since both were sent to the mortgaged property rather than to his legal residence.

The government initiated the present action on August 4, 1988. Subsequently, the court permitted the government to amend its complaint in an Order filed May 12, 1989. *See* Doc. 8. The amended complaint only seeks personal judgment against defendant. The original complaint also sought foreclosure on the mortgaged properties but this claim was dropped when subsequent to the initiation of this action the City of Syracuse foreclosed on the

---

1. Given this disposition the court need not address the government's motion for a protective order.

2. The government in paragraph 10 of its complaint asserts that defendant failed to pay "the installment due September 1, 1982 on Loan No. 1 and the installment due September 1, 1984 on Loan No. 2." *See also* Government's Memorandum of Law, at 2. Since the initial installments on both loans as noted in the above text were due prior to these dates, paragraph 10 seems to suggest that defendant made payments on the prior owing installments. The government at oral argument on November 17, 1989, however, clarified that it is in fact claiming that defendant never made any payment under either loan.

property for failure to pay taxes. *See* Affidavit of William H. Pease ¶ 6, Doc. 6.

The central issue raised by the motions before the court is whether this action was timely commenced under the applicable statute of limitations. Both parties agree that a six year statute of limitations applies to the present action. This limitation period is found in 28 U.S.C. § 2415(a) which provides in relevant part that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...." The legal dispute in this case involves the question of when the government's right of action accrued. The government contends that the statute of limitations began to run on the unpaid *future* installments when HUD notified defendant by letter that it was accelerating the loans, which as noted above was March 20, 1984 and August 1, 1985 respectively. However, the government asserts that since each installment payment constitutes a separate contract, with regard to all installments which were unpaid as of March 20, 1984 and August 1, 1985, it can recover only those installments which came due six years prior to the commencement of this action on August 4, 1988. Accordingly, the government concedes that it may not seek recovery on any unpaid installments that became due prior to August 4, 1982. By contrast, defendant contends that the government's right of action accrued upon defendant's initial default on each loan. Since defendant failed to make any payments on either loan, he argues that the statute of limitations began running on December 1, 1980 with regard to the first loan and April 1, 1981 with regard to the second loan. Consequently, defendant argues that the government's entire action is time barred under 28 U.S.C. § 2415(a).

▋ This court's review of the case law reveals that the government's right of ac-

tion accrues in a case such as this when the government first makes a demand for payment in full. In *United States v. Alessi,* 599 F.2d 513 (2d Cir.1979) (per curiam), the Second Circuit held that if the terms of the agreement provide that the principal does not become due until the government chooses to accelerate, then under 28 U.S.C. § 2415(a) the government's right of action accrues not at the time of default but when the government exercises its right to accelerate. The court further noted that, "Such acceleration must consist of either notice of election to the *mortgagor* or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage." (emphasis in original); *see also United States v. Lowy,* 703 F.Supp. 1040, 1043 (E.D.N.Y.1989) (holding that the government's "demand letters triggered the running of the statute").

▋ In the present case, as noted, the government sent defendant letters informing him that it was accelerating the total unpaid amount of each loan. Although defendant claims that he never received any notice of the government's acceleration because the letters were sent to the mortgaged property rather than his legal residence, it is clear that at least with respect to the 1984 letter the notice was sent to the address which was listed as defendant's residence in the mortgage document, namely, Paradice Road, Central Square, New York 13036.[3] *See* Complaint, Exhibit 2, Doc. 1. Even if this was no longer defendant's residence, defendant can not insulate himself from liability simply by changing residences without notifying the government. Moreover, even assuming that the government did not sufficiently notify defendant of its election to accelerate prior to commencing this action, this does not help defendant. In *Alessi* the court held that the initiation of suit constituted a notice of election to accelerate which acted to trig-

---

**3.** The second letter was sent to 200–04 Kirk Avenue Syracuse, New York 13205 which was the address of the mortgaged property contained in the second mortgage document. It is unclear why this was done since the second mortgage document listed defendant's residence as Paradice Road, Central Square, New York 13036. *See* Complaint, Exhibit 4, Doc. 1.

ger the statute of limitations. Accordingly, whether the government manifested its election to accelerate in 1984 and 1985 or at the time it initiated this suit, under the reasoning of the court's decision in *Alessi* the government commenced this suit within six years of the accrual of its right of action.

■ Defendant also argues that it would be unfair to allow the government to recover in this action when it did not act promptly upon defendant's default in accelerating on the loans and then commencing this action. The court notes that recent decisions from other jurisdictions add the requirement that for the cause of action to accrue on the first demand for full payment, the demand for payment must be made within a reasonable time. *See United States v. Rollinson*, 866 F.2d 1463, 1466 (D.C.Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989): *Curry v. United States*, 679 F.Supp. 966, 970 (N.D. Cal.1987); *but see United States v. Lowy*, 703 F.Supp. 1040, 1043 (E.D.N.Y.1989) (refusing to follow the rule that the first demand come within a reasonable time). This requirement appears to have been added so that the lender would not be in a position to inordinately postpone operation of the statute of limitations.[4]

■ Even if this court were to inject a reasonableness requirement into the *Alessi* rule, this court is unwilling to find that the government's delay either in providing notice of acceleration or in commencing this action was unreasonable under the circumstances. Although the stated facts in *Alessi* are not entirely clear, it appears that the government in that case gave notice of its acceleration at least five and a half years after the initial default. *See United States v. Alessi*, 599 F.2d at 515 n. 4. In the present case, the government gave notice of its acceleration approximately three years and four months after defendant's default on the first loan and four years and four months after defendant's default on the second loan. Furthermore, because both notes provided in express terms that the "[f]ailure of the Government to exercise [the acceleration] option shall not constitute a waiver of such default," defendant's subjective belief, or hope, that the government no longer intended to seek repayment on the loans as a result of its delay, and that he might thereby avoid his debt was unjustified. Finally, since defendant has not articulated any tangible prejudice which he has suffered as a result of the government's delay,[5] to permit defendant to shirk his financial obligation would be to provide him with a windfall at the expense of the public fisc. The court refuses to sanction such a result.

Accordingly, the court grants the government's motion for summary judgment and denies defendant's motion to dismiss. The government is directed to submit a proposed order setting forth the total amount claimed in light of the foregoing decision. Such order should include a statement indicating how the amount claimed was calculated and a direction to the clerk of the court to enter judgment in accordance with the terms of the order.

It is So Ordered.

---

4. The requirement that the government exercise its option to accelerate within a reasonable time or otherwise relinquish its claim seems to indirectly subject the government to defenses that the Second Circuit has held are generally not applicable against the United States. For example, the defense of laches is not available against the United States, *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. RePass*, 688 F.2d 154, 158 (2d Cir.1982), and the doctrine of eq-

uitable estoppel is not applicable against the United States "except in the most serious of circumstances." *United States v. RePass*, 688 F.2d at 158.

5. At oral argument, defendant reluctantly admitted that even if the government had provided earlier notice of its intent to accelerate on the loans, his financial position would not have permitted him to make full, or any, payment.