[Civ. No. 39923. Second Dist., Div. One. Dec. 14, 1972.]

CITY OF CULVER CITY, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant;
CITY OF LOS·ANGELES, Real Party in Interest and Appellant.

Counsel

Dale Austin, City Attorney, and Murray O. Kane, Assistant City Attorney, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

Roger Arnebergh, City Attorney, James A. Doherty, Assistant City Attorney, and Ronald A. Tuller, Deputy City Attorney, for Real Party in Interest and Appellant.

OPINION

**LILLIE, J.**—Petitioner City of Culver City sought a writ of mandate directing respondent board to transmit to it all sales taxes collected by said respondent from 1956 through 1969 and erroneously distributed to City of Los Angeles, real party in interest, and to correct its records accordingly. From a judgment directing issuance of the writ, both respondent board and real party in interest have appealed; Culver City, in turn, has appealed from the judgment insofar as it failed to award prejudgment interest.

The following background facts were the subject of stipulation. As authorized by the Bradley-Burns Uniform Local Sales and Use Tax Law (Rev. & Tax. Code, § 7200 et seq.), in February of 1956 both Culver City and Los Angeles enacted ordinances imposing a 1 percent sales and use tax within their respective boundaries; thereafter each entered into an agreement with the board whereunder the latter would administer and collect said taxes. Pursuant to an application therefor, a seller's permit was issued by the board on September 21, 1956, to "Norm's Inc., dba Norm's Culver City," said business admittedly being conducted within the official boundaries of Culver City; the above permit also contained the area code number "11" which is assigned to businesses operating in Culver City. On January 2, 1957, acting under the erroneous belief that Norm's address was within the boundaries of Los Angeles, respondent board changed the area code from "11" (Culver City) to "50" (Los Angeles); although notification was given to Los Angeles, Culver City was never notified by respondent board of the area code change and the transmittal to Los Angeles of sales and use taxes (eventually exceeding $59,000) generated by "Norm's Culver City." On August 25, 1966, a new set of

permit cards for each business of record was mailed to Culver City by the board; on December 26, 1967, Culver City wrote to respondent board, indicating that there was no card for Norm's, as well as several other businesses, in the duplicate set received more than a year earlier. On February 8, 1968, Culver City again wrote the board, requesting duplicate cards for a number of businesses, including Norm's. On March 1, 1968, the board replied, stating (among other things) that Norm's address on South LaCienega was in Los Angeles "and is correctly coded to Los Angeles (1950)." On October 31, 1969, a letter was mailed to the board by Culver City's treasurer, directing attention to the erroneous distribution of taxes collected from Norm's; on November 3 (three days later) the area code for Norm's was changed by the board from "50" to "11" with this explanation on one of its forms: "Incorrect to Los Angeles since inception. Local tax being allocated effective 4-1-67." Thereafter, although taxes thus erroneously distributed from 1956 through 1969 totalled $59,382.11, the board redistributed to Culver City only $4,239.20 in view of the limiting language of section 7209, Revenue and Taxation Code.[1] After rejection of its claim for recovery of the unredistributed portion of taxes erroneously allocated, Culver City commenced a legal action on November 17, 1970, against Los Angeles seeking recovery; an answer interposing the defense of the statute of limitations was filed by Los Angeles. While such action was still pending, on June 17, 1971, Culver City instituted the present proceeding.

In ordering the relief prayed for here, the trial court concluded that Culver City had no plain, speedy and adequate remedy at law other than that prayed for in its petition, and that the lack of such remedy had already been determined by the issuance of the alternative writ; under acts sufficiently pleaded by petitioner, both Los Angeles and the board were estopped to assert either the time limitation of section 7209, *supra,* or any other statute of limitation as a bar to the redistribution of the total sum erroneously distributed to Los Angeles by the board, it being further concluded that such estoppel did not terminate until October 31, 1969; the acts giving rise to the above estoppel were performed by the board in privity with Los Angeles and as agent for the latter; and recovery of the misdirected funds necessitated the performance of mere ministerial duties (transfer of funds from one account to another) and not the payment of funds (in the form of damages) based upon an underlying monetary obli-

---

[1]Section 7209 provides: "The board may redistribute tax, penalty and interest distributed to a county or city other than the county or city entitled thereto but such redistribution shall not be made as to amounts originally distributed earlier than two quarterly periods prior to the quarterly period in which the board obtains knowledge of the improper distribution."

gation, thus precluding the award of prejudgment interest. The foregoing conclusions are challenged by the board and Los Angeles, either singly or jointly, and form the basis of this appeal.

■ To warrant reversal, we need only consider the claim that the trial court erred in ruling that Culver City had no plain, speedy and adequate remedy at law, particularly in light of the court's recognition that a prior suit against Los Angeles for recovery of all monies erroneously distributed was then pending. ■ Since such suit was concededly brought under a quasi-contractual theory, it is urged that the following governs: "As a general proposition, mandamus is not an appropriate remedy for enforcing a contractual obligation against a public entity for at least two reasons. The first is that contracts are ordinarily enforceable by civil actions, and the writ of mandamus is not available unless the remedy by civil action is inadequate. [Citations.] The other is that the duty which the writ of mandamus enforces is not the contractual duty of the entity, but the official duty of the respondent officer or board." (*Wenzler* v. *Municipal Court,* 235 Cal.App.2d 128, 132 [45 Cal.Rptr. 54].) ■ As noted in *Wenzler,* however, the general rule is relaxed in cases involving a dispute as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty (*Tevis* v. *City & County of San Francisco,* 43 Cal.2d 190, 198 [272 P.2d 757]); thus, it is there pointed out that while such cases recognize that "the ultimate effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official coopera- tion and the ministerial nature of the official acts involved." (*Supra,* p. 198.)

*Tevis* is relied on by Culver City, it being argued that the correction of sales tax account records was necessary in conjunction with the recovery of taxes withheld from it; both such matters, it is asserted, require the performance of mere ministerial duties by the officials involved. Such attempted analogy between this case and *Tevis* is fallacious for two reasons. First, the trial court expressly found (No. XLVIII) that the board corrected its records as of November 3, 1969 (prior to the filing of the instant action) by changing the area code for Norm's from "50" (Los Angeles) to "11" (Culver City).[2] Second, the narrow exception to the general rule applied in *Tevis* has been consistently confined to claims for wages by state or municipal employees—*Tevis* involved a proceeding to compel the allow- ance of two weeks' vacation pay. Indeed, in applying the exception to facts there presented, the Supreme Court again pointed out that " 'mandamus

---

[2]Although both the board and Los Angeles denied such allegation, without any evidence in support thereof (and over objection) the court also found that the re- covery of the misdirected funds necessitated the performance of ministerial duties by the board.

does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract.' [Citation.]" (*Supra,* p. 198.)

Also relied on by Culver City is *Berkeley Sch. Dist.* v. *City of Berkeley,* 141 Cal.App.2d 841 [297 P.2d 710], which dealt with the refusal of the city auditor to deliver certain tax moneys, theretofore collected, to the county treasurer for use of the schools; she apparently withheld such funds because of the erroneous belief that a charter provision was invalid. The proceeding was instituted in the appellate court which rejected the city's argument that the district had an adequate remedy at law in the form of a simple action for money: "As compared with an action at law for money, the writ of mandate not only better comports with the dignity of public officials who stand by their duties as they see them, but also carries through to conclusion by directing the issuance of a warrant [citation], while a judgment at law, even when final, with its auxiliary, the issuance of a writ of execution, might well be inadequate and certainly would be inappropriate." (*Supra,* pp. 845-846.) Based on such considerations, the appellate court ordered the issuance of a peremptory writ directing the auditor to issue her warrant on the city treasury of all funds realized from tax levies for school purposes as alleged in the petition. As we read the excerpts from the opinion the case turns in great measure upon the inappropriateness of ordering a writ of execution (in aid of a money judgment) against an official who "[stood] by [her] duties as [she] saw them" when the alternate remedy of the writ could accomplish the same result and would "better [comport] with the dignity of public officials." Too, the citation omitted in the excerpt above quoted is that of *Goldsmith* v. *Board of Education,* 63 Cal.App. 141, 146 [218 P. 296], which, in turn, relies on the early case of *Raisch* v. *Board of Education,* 81 Cal. 542 [22 P. 890]. This latter case is also cited and discussed by Culver City for the broad proposition that an action for damages for neglect of duty will not supersede the remedy afforded by mandamus, but the determination there was not as broad as contended. As pointed out in the opinion, while defendant board had contracted to pay Raisch for 1,500 feet of hose furnished by him on two separate occasions, "it only had power to pay by drawing drafts on the school fund, its contracts must be construed to be one to draw drafts, and not to pay money directly. If, then, respondent could have maintained an ordinary action, it must have been an action against the members of the board to recover damages for neglect of duty. But such an action evidently would not have been equally convenient, beneficial, and effective as the proceeding by *mandamus,* since it would not have compelled the board to do what it had contracted to do, and what, as we have seen, official duty required it to do." (*Supra,* p. 546.) Since the proceeding was

one to compel defendant to draw the drafts asked for, the judgment directing issuance of a writ of mandate to that end was affirmed. ■ In the instant case, by contrast, there has never been any contention by Culver City that the named real party in interest (Los Angeles) was not empowered to "pay money directly" as a result of the demands asserted in the prior (and pending) suit.

Absent any proof that the instant action calls for the performance of necessary ministerial duties by the board (fn. 1, *supra*), it appears that such proceeding merely uses the board as a vehicle by which recovery in avoidance of a legal action is sought from Los Angeles. Culver City, understandably, may have been concerned about the bar of the statute of limitations affirmatively pleaded in the prior action; indeed, the record reveals that the trial court tentatively adhered to the view that such defense was "probably properly interposed as to the City of Los Angeles." Thereafter, as already noted, the court made findings that both Los Angeles and the board were estopped from asserting such defense in view of all the circumstances here presented. ■ ■ But while estoppel is an equitable defense, under current California pleading and practice it is available in actions at law as well as suits in equity (*Moss* v. *Bluemm,* 229 Cal.App.2d 70, 72-73 [40 Cal.Rptr. 50]); too, "there are many instances in which an equitable estoppel will run against the government, where justice and right require it" (18 Cal.Jur.2d Rev., Estoppel, § 6), including reliance on statutes of limitations. (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305-306 [61 Cal.Rptr. 661, 431 P.2d 245].) If properly pleaded, therefore, estoppel is available in the pending legal action against Los Angeles, its existence being a question of fact for the trial court (*Driscoll* v. *City of Los Angeles, supra,* p. 305); but the determination that it was properly invoked by Culver City in the case at bar does not add one iota of virtue to the ensuing judgment which, for reasons already stated, cannot stand. In *Irvine* v. *Gibson,* 19 Cal.2d 14 [118 P.2d 812], the petitioner was likewise concerned about the impact of the statute of limitations in his mandamus action to compel the payment of principal and interest on certain bonds; the proceeding was dismissed without prejudice to the petitioner's rights to prosecute a pending legal action for the same relief, leaving it to the court in which such action was pending to determine any issue involving the statute of limitations.

■ It is contended by Culver City that the absence of another adequate remedy was determined by the trial court when it granted the alternative writ; cited is *Mannheim* v. *Superior Court,* 3 Cal.3d 678, 686 [91 Cal. Rptr. 585, 478 P.2d 17], which so holds. With one exception, all of the

decisions which adhere to the above proposition or principle involved original proceedings for writs in the appellate courts; they either presented issues of great importance requiring prompt disposition or were based upon the consideration that review of a lower court's determination would serve no purpose but delay. The one exception is *W. A. Rose Co.* v. *Municipal Court,* 176 Cal.App.2d 67, 74 [1 Cal.Rptr. 49], which holds that the adequacy of other remedies is a factual question the determination of which lies largely in the discretion of the trial court. It is contended by both Los Angeles and the board that such discretion was here abused; we agree that this contention must be sustained in light of the following circumstances. Section 1107, Code of Civil Procedure, affords the real party in interest or the respondent five days after service and filing of the application for the writ within which to serve upon the applicant, and file with the court, points and authorities in opposition. Although served more than five days prior to the issuance of the alternative writ, Culver City's petition was not filed until June 17, 1971, the same day on which the alternative writ was issued, thus denying both the board and Los Angeles the statutory five days within which to oppose the action then requested. It is, therefore, properly argued that the trial court had no discretion to exercise, particularly the sound discretion contemplated by *Rose* and other decisions therein cited. Too, we cannot assume that the court's discretion was soundly exercised since the error complained of appears in the record. (*Ertman* v. *Municipal Court,* 68 Cal.App.2d 143, 149 [155 P.2d 908, 156 P.2d 940].) All of the above matters compel the determination that we are not concluded by the holding in *Mannheim* and other decisions which state the rule for appellate courts only.

Since the judgment directing issuance of the writ must be reversed, it follows that Culver City's appeal from the denial of prejudgment interest has become moot and is dismissed.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 9, 1973, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied February 8, 1973.