**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael John GARAN, Defendant,**

and

**George Frederick Rombach,**
**Defendant–Appellant.**

**No. 92–55090.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1993.

Decided Dec. 17, 1993.

---

George F. Rombach, defendant-appellant, in pro. per.

Frank D. Kortum, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: FLOYD R. GIBSON,* HALL, and KLEINFELD, Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge:

George Rombach appeals the district court's entry of summary judgement in favor of the government in its suit to enforce Rombach's guaranty of a Small Business Administration loan. We vacate the judgment and remand for further proceedings.

## I. BACKGROUND

On February 23, 1977, Orangematic, Inc. executed a note in the amount of $388,000 and received loan proceeds in that amount from Union Bank. This loan was made under the Small Business Administration (SBA) Guaranteed Loan Program. Orangematic deposited the proceeds in its account at Union Bank. Simultaneously with the execution of the note, Rombach, one of the company's officers and directors, signed a guaranty on the note, purportedly on a bank official's representation that it would be revocable should Rombach resign as an officer and director of Orangematic. On May 27, 1977, some three months later, Rombach resigned as an officer and a director. Approximately three months after resigning, Rombach sent Union Bank a letter in which he referenced the bank official's oral representation, declared that he was no longer an officer or a director, and "revoked" his guaranty.

Union Bank assigned the note to the SBA in January 1984. The last payment Orangematic made was on August 17, 1985; in October 1986 the SBA issued Rombach a written demand for payment and, in January 1991, filed suit on the guaranty. The government moved for summary judgment; which was

* The Honorable Floyd R. Gibson, Senior Circuit Judge from the Eighth Circuit, sitting by designa-

860

granted. Rombach appeals.[1]

## II. DISCUSSION

### A. Laches/Unreasonable Delay

■ Rombach concedes that laches cannot run against the government, but argues that in a situation in which there has been obvious prejudice by delay, the defense should be permitted. The delay Rombach complains of is not clear. If he refers to the delay between the time Orangematic defaulted and the government demanded he make good on the guaranty, we note the delay was approximately fourteen months. Although the government is immune from claims of laches, *United States v. Menatos,* 925 F.2d 333, 335 (9th Cir.1991), we stated in *United States v. Gottlieb,* 948 F.2d 1128 (9th Cir.1991) that the SBA was precluded from forestalling commencement of the limitation period by inordinately failing to make the demand for payment necessary to allow the SBA's cause of action to accrue. *Id.* at 1130–31 (citing *United States v. Vanornum,* 912 F.2d 1023, 1027 n. 5 (8th Cir.1990)). In viewing Rombach's claim of unreasonable delay as raising only the defense of laches, the district court understandably overlooked the issue of whether the SBA's demand for payment was made within a reasonable time as required by *Gottlieb.* Accordingly, we remand for consideration of this issue.

### B. Estoppel

■ As Union Bank's assignee, "the Government stands in the shoes of the insured lender and possesses only those rights against the borrower that the lender could have asserted." *United States v. Frisk,* 675 F.2d 1079, 1082 (9th Cir.1982); *see also United States v. California,* — U.S. —, —, 113 S.Ct. 1784, 1791, 123 L.Ed.2d 528 (1993) (Government cannot be subrogated to a right free of a pre-existing infirmity (quotation omitted)); *Guaranty Trust Co. v. United*

*States,* 304 U.S. 126, 141, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938) ("the United States acquired by the assignment whatever rights then survived the running of the statute against [the assignee]"). Although these cases involved instances in which the government acquired a cause of action that was time-barred, we do not believe the logic of these cases applies exclusively to that particular "pre-existing infirmity." As the Supreme Court explained, subjecting the government to the defenses that could have been subjected against the assignor "offends against no policy of protecting the ... sovereign. It deprives the United States of no right, for ... the United States never acquired a right free of a preexisting infirmity...." *Guaranty Trust,* 304 U.S. at 142, 58 S.Ct. at 793. In other words, having acquired a claim subject to a valid defense, there is no public policy reason for insulating the government from that defense. Accordingly, if Union Bank would have been estopped in a suit against Rombach, the government has acquired a claim subject to a preexisting infirmity and would be similarly barred.[2]

■ "[W]hile estoppel is an equitable defense, under current California pleading and practice it is available in actions at law as well as suits in equity." *Culver City v. State Bd. of Equalization,* 29 Cal.App.3d 404, 105 Cal.Rptr. 602, 606 (1973). Thus, the defense may be "applied to prevent a person from asserting a right which has come into existence by contract." *Trustees of the State Colleges & Universities v. National Collegiate Athletic Ass'n,* 82 Cal.App.3d 461, 147 Cal.Rptr. 187, 193 (1978). Whether estoppel is justified in a given case is a question of fact, *Culver City,* 105 Cal.Rptr. at 606, and consists of four elements: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe

tion.

1. In light of our disposition of this case, we do not believe it necessary to address the many evidentiary issues raised by Rombach.

2. Lest there be any concern over holding one party subject to an estoppel caused by another

party, under California law "[a]n estoppel binds not only the guilty party but those in privity with him; discernment of privity rests upon a case-by-case examination." *People ex rel. Department of Pub. Works v. Volz,* 25 Cal.App.3d 480, 102 Cal. Rptr. 107, 112 (1972).

it was so intended; (3) the party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *Trustees,* 147 Cal.Rptr. at 193 (quotation omitted).

■ Rombach has made several factual assertions that preclude summary judgment on the issue of estoppel. The bank represented that Rombach would be permitted to revoke his guaranty once he resigned his position with Orangematic. Rombach then wrote a letter to the bank in which he revoked his guaranty and indicated the bank should contact him if it had any questions; the bank did not contact Rombach. During a conversation with a bank official, Rombach was told the bank had received his letter. In seeming acknowledgement of its earlier promise, the bank stopped requiring Rombach to provide the personal financial statements it had required prior to his revocation. Finally, when payment from the guarantors was sought, all the guarantors except Rombach were contacted initially. These assertions, viewed in the light most favorable to Rombach, are sufficient to preclude the entry of summary judgment on this issue; further fact-finding is warranted.

The government contends the oral representations made by Union Bank are unenforceable because 13 C.F.R. § 122.20(c)(1977) (currently codified at 13 C.F.R. § 120.201–1 (1993)) provides that the lending institution cannot agree to any alterations in the term of the guaranty without the prior, written consent of the SBA. Our holding today is not in conflict with this regulation. If the sole basis advanced for estoppel was the oral statements made by the bank official, we would not rule in Rombach's favor. *Cf. Benson v. Small Business Admin.,* 644 F.2d 1366, 1368 (9th Cir.1981). Similarly, the fact that Rombach wrote a letter expressing his intent to revoke his guaranty would be no more than an anticipatory breach and, alone, would not create grounds for an estoppel. However, these factors, combined with the other facts we described above, raise serious questions about the bank's conduct in enticing Rombach to sign the guaranty to his obvious detriment. Under the facts of this case, Rombach may be able to prove sufficient facts to show that the bank would have been estopped from recovering on his guaranty, meaning the government obtained Rombach's guaranty subject to that pre-existing infirmity.

## III. CONCLUSION

Material issues of fact remain regarding the SBA's delay in demanding payment from Rombach and whether the bank would have been estopped from collecting from Rombach. Accordingly, we vacate the judgment below and remand for further proceedings.