UNITED STATES of America,
Plaintiff–Appellee,

v.

Vivian GORDON and Carl C. Gordon,
Defendants–Appellants.

No. 464, Docket 94–6290.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1995.

Decided Feb. 28, 1996.

Michael J. Silverstein, Deutsch & Spring, New York City, for defendants-appellants.

Kathleen M. Reidy, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Steven M. Haber, Assistant United States Attorney, of counsel), for plaintiff-appellee.

Before: LUMBARD, ALTIMARI, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Guarantors appeal from a summary judgment of the United States District Court for the Southern District of New York (Shirley Wohl Kram, J.). The district court held them liable for a defaulted government loan after rejecting, as a matter of law, their statute of limitations defense. On appeal, the guarantors renew their contention that (1) most of the government's claim was time-barred as a matter of law under 28 U.S.C. § 2415(a), and add that (2) material disputes of fact precluded summary judgment on the rest of the claim. We disagree on both counts, and affirm.

I.

In December, 1979, the Economic Development Administration of the U.S. Department of Commerce ("EDA") agreed to lend Tableau Company, Inc. ("Tableau"), a lamp manufacturer, up to $700,000. In January, Tableau executed and delivered a promissory note to the EDA for up to $700,000, which was secured by: a mortgage on Tableau's Brooklyn, New York premises; a lien on Tableau's machinery, equipment, furniture, and fixtures; and a personal guaranty signed by Tableau's president, Carl C. Gordon, and his wife, Vivian.

Under the note, Tableau had to pay monthly installments of interest from March 4, 1980 through January 4, 1981; thereafter Tableau had to pay monthly installments of both principal and interest until January 4, 1990, when the loan would be repaid in full. Failure to pay any installment of principal or interest was an "event of default," upon which the EDA could accelerate all unpaid principal and interest.

The Gordons' guaranty, which was separate from the note, provided that:

In order to induce the United States of America, Economic Development Administration (hereinafter called "Lender"), to make a loan or loans to Tableau Company, Inc. (hereinafter called the "Debtor"), the undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise,

in accordance with the terms thereof, of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the Note of the Debtor.

In addition:

> In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said Note, the undersigned, immediately upon the written demand of Lender, will pay to Lender the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned.

The EDA disbursed $250,000 the day the guaranty was executed. Two months later, Tableau missed the first interest payment due under the note. Approximately three weeks later, the EDA lent Tableau another $150,000. Tableau missed all its monthly payments, and, indeed, made no installment payments on the loan.

According to Carl Gordon, on or about October 30, 1980, EDA Financial Analyst Leonard S. Richter met with him and other Tableau representatives to discuss the problem. Richter allegedly denied Tableau's request for another loan disbursement, stating that the Tableau loan was now "terminated and the entire balance due and owing" to the United States.

Tableau closed up shop soon thereafter, and its financial difficulties only deepened. In November, 1980, it turned over its machinery and equipment to a creditor; it is disputed whether this happened with the EDA's permission. In September, 1982, the City of New York initiated tax foreclosure proceedings against Tableau's Brooklyn premises, and took title thereto, subject to the EDA mortgage.

On June 15, 1984, the EDA sent a letter to the Gordons, as guarantors, informing them of Tableau's default. The letter also accelerated the debt due under the note, and demanded payment from them under the guaranty of all unpaid principal and accrued interest—roughly $560,000. The letter asked the Gordons to "mak[e] a good faith, reasonable offer of settlement." Apparently, they never responded. Over two years later, on October 21, 1986, the EDA again demanded payment of the unpaid principal and accrued interest; the tab now exceeded $650,000. The Gordons did not respond to this demand letter, either.

In 1987, the City of New York sold the Tableau premises to the New York City Public Development Corporation, which, a year later, paid the EDA $150,000 to release the mortgage lien. The EDA used this money to offset some of the Tableau debt. The Gordons failed to pay the balance of the debt, and on June 13, 1990, almost six years after the first demand letter, and over ten years after Tableau's first default, the government sued the Gordons on the guaranty.

In their answer to the government's complaint, the Gordons conceded that Tableau defaulted on the note as early as March, 1980, but asserted a statute of limitations defense. Some three years later, the parties filed cross-motions for summary judgment. The only issue was the timeliness of the government's suit: the parties agreed that the six-year limitations period on government contract claims set forth in 28 U.S.C. § 2415(a) controlled, but disagreed as to when the period of limitations began to run.

The Gordons contended below that the six-year period began to run on October 30, 1980, when the EDA allegedly first accelerated the loan, making the entire suit—commenced in June, 1990—untimely. Alternatively, the Gordons argued that § 2415(a) at least barred the government from recovering those unpaid installments due and payable more then six years before this suit began, since each missed payment was a separate default under the note (and, by implication, under the guaranty), triggering its own limitations period.

The government countered that, under the guaranty, the Gordons were liable for Tableau's defaults only upon written demand. Accordingly, the government contended that § 2415(a)'s limitations period began running on June 15, 1984, when the EDA made its first written demand on the Gordons for payment of the accelerated debt. Since the government commenced suit within six years

of the written demand, the government argued that its suit was timely.

The district court agreed with the government in an unpublished opinion. The court cautioned, however, that where, as here, a guaranty expressly conditions liability on a written demand for payment, the government must make its demand within a reasonable time after default. Noting that the Gordons had not shown any prejudice from whatever delay there was, the court entered judgment for the government. This appeal followed.

## II.

■ We review *de novo* a district court's grant of summary judgment to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *See Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir. 1995). The Gordons renew their argument below that (1) the government, as a matter of law, cannot recover those installments Tableau failed to pay that were due more than six years before this suit began. They add an argument that (2) there were material questions of fact concerning (a) when the EDA accelerated the note and (b) the reasonableness of the government's delay in making a written demand. We are not persuaded.

■ Under 28 U.S.C. § 2415(a),

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

This limitations period governs an action by the government for money damages under a guaranty. *See, e.g., United States v. Culver,* 958 F.2d 39, 41 (4th Cir.1991). And, the six-year period starts to run when the "right of action" against the guarantor accrues. *Cf. Crown Coat Front Co. v. United States,* 386 U.S. 503, 510–11, 87 S.Ct. 1177, 1181–82, 18 L.Ed.2d 256 (1967) (under 28 U.S.C. § 2401(a), which limits "right[s] of action"

*against* the government, "[o]ur initial inquiry is ... when the right of the contractor in this case to bring suit in [federal court] first accrued").

■ To determine when the government could first have sued the Gordons under the guaranty, we must look to the guaranty itself. *See, e.g., id.* at 510–12, 87 S.Ct. at 1181–1183 (reviewing contract to determine when contractor's right of action thereunder accrued against the government). The guaranty expressly included a demand (written) provision: if Tableau defaulted on the note, the Gordons, as guarantors, had to pay "immediately upon the written demand of" the EDA whatever amount Tableau owed (whether by acceleration or otherwise).

Like the Eighth and Ninth Circuits, which have considered guaranties containing identical language, we construe this demand provision as a condition precedent to the Gordons' liability under the guaranty. *United States v. Gottlieb,* 948 F.2d 1128, 1129–30 (9th Cir. 1991); *United States v. Vanornum,* 912 F.2d 1023, 1026–27 (8th Cir.1990); *see* 3A Arthur L. Corbin, *Corbin on Contracts* § 643, at 75, 78 (1960). The Gordons concede that a written demand was a condition precedent to the government's right to maintain an action under the guaranty. Because the government could not sue, *i.e.,* had no right of action against, the Gordons until it made a written demand upon them, this suit, commenced within six years after the written demand, is timely. *Cf. Crown Coat,* 386 U.S. at 511, 87 S.Ct. at 1182 ("the 'right of action' of which § 2401(a) speaks is ... the right to file a civil action in the courts").

The Gordons dismiss *Gottlieb* and *Vanornum* as not "particularly well reasoned." They emphasize that in those cases (as in our case), the acceleration clause did not appear in the *guaranty,* but only in the underlying *note.* From that, they argue that because the note determines how much the guarantors owe, the note, and not the guaranty, controls the date of accrual of the right of action against the Gordons. And, because a right of action against Tableau under the note accrued upon acceleration, *e.g., United States v. Dos Cabezas Corp.,* 995 F.2d 1486, 1490 (9th Cir.1993), the Gordons conclude

that the factual dispute over when the EDA accelerated the loan—they say October 30, 1980; the government says June 15, 1984—precludes summary judgment. We disagree with their premise that the terms of the guaranty do not govern when the right of action accrued against the Gordons.

True, the Gordons could not be liable under the guaranty until Tableau defaulted on the note. *Vanornum,* 912 F.2d at 1026; *see also In re Grayson–Robinson Stores, Inc.,* 321 F.2d 500, 502 (2d Cir.1963). And, they could not be liable as guarantors for the full amount due under the Tableau note until the government invoked the note's acceleration clause. *See United States v. Feterl,* 849 F.2d 354, 356 (8th Cir.1988); *see also United States v. Rollinson,* 866 F.2d 1463, 1467 (D.C.Cir.), *cert. denied,* 493 U.S. 818, 110 S.Ct. 71, 107 L.Ed.2d 37 (1989). But, until the EDA made a written demand upon the Gordons, they had no liability under the guaranty at all, and the government could not sue them. *Gottlieb,* 948 F.2d at 1129–30; *Vanornum,* 912 F.2d at 1027; *see United States v. Gilmore,* 698 F.2d 1095, 1097 (10th Cir.1983) (only when government "exercised the acceleration clause *and* demanded payment in full" from the guarantors did § 2415(a)'s limitations period begin to run) (emphasis added). The note executed by Tableau and the guaranty executed by the Gordons are two separate, albeit related, contracts, establishing different jural relationships. Consequently, any dispute about when the EDA accelerated the Tableau note is irrelevant to the question of when the Gordons' obligations as guarantors were fixed. Similarly, it does not matter that claims against Tableau under the note for some of the missed installment payments may be time-barred. The guaranty, not the note, controls the Gordons' obligations. *See Gottlieb,* 948 F.2d at 1130.

Next, the Gordons argue that, because the government could have demanded payment from them on the guaranty when Tableau first defaulted, the government's right of action accrued then, and not when it actually made the demand. To hold otherwise, they argue, would allow the government to benefit from its own failure to make a timely demand. For this proposition, they rely on a New York case, *Sibbald v. Bethlehem Iron Co.,* 83 N.Y. 378, 384 (1881), and a case construing New York law, *Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150, 1161 (2d Cir.1982).

The guaranty, however, expressly provides that it is to be "interpreted and enforced in accordance with applicable Federal law." Furthermore, the United States is, through the EDA, a party to the guaranty. Thus, federal common law governs our interpretation of the guaranty. *Boyle v. United Techs. Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988) ("obligations to and rights of the United States under its contracts are governed exclusively by federal law"). Consequently, the state law cases cited by the Gordons do not trump *Gottlieb* and *Vanornum,* which construed, under federal common law, guaranties virtually identical to the one here.

### III.

We acknowledge the force of the Gordons' argument that the government should not be able to postpone the running of the statute of limitations indefinitely by deferring the demand. *See United States v. Cocoa Berkau, Inc.,* 990 F.2d 610, 614 (Fed.Cir.1993); *United States v. Commodities Export Co.,* 972 F.2d 1266, 1271 & n. 3 (Fed.Cir.1992), *cert. denied,* 507 U.S. 910, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993); *see also* 18 Samuel Williston, *Law of Contracts,* § 2021A, at 697 (Walter H.E. Jaeger ed., 1978) ("[w]here the plaintiff's right of action depends upon a preliminary act to be performed by himself he cannot suspend indefinitely the running of the Statute of Limitations by delaying performance of this act"). Thus, we agree with the district court that once Tableau defaulted on the note, the government could not unreasonably delay demanding payment on the guaranty. *See United States v. Garan,* 12 F.3d 858, 860 (9th Cir.1993); *Vanornum,* 912 F.2d at 1027 n. 5.

The Gordons contend that there are material questions of fact concerning the reasonableness of the delay between Tableau's first default and the government's written demand. They maintain that the district court

erred by requiring them to demonstrate prejudice from the delay. They seek a remand to the district court for trial on the reasonableness issue. We decline the invitation.

■ First, the Gordons never argued below that the government unreasonably delayed in making its written demand. Indeed, they argued *against* reading a reasonable time requirement into the demand provision. *See* Defs.' Reply Mem. Supp. Summ. J. at 16–19. The Gordons thus cannot raise the reasonableness issue now. *See, e.g., Hutton Constr. Co. v. County of Rockland,* 52 F.3d 1191, 1193 (2d Cir.1995).

■ Even if they could, their answer and the affidavit supporting their motion for summary judgment contain no allegations on this issue. And, although they alleged in their answer that the government itself caused Tableau's default, they never denied that the government satisfied all conditions of the guaranty itself—including, implicitly, the condition that demand be made within a reasonable time after Tableau's default. Thus, we are hard-pressed to say that the Gordons have created a material issue of fact on the reasonableness issue.

■ On the merits, we think the delay here was reasonable, though for reasons other than the district court's. *See Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993) ("we may affirm on any basis supported by the record, including grounds upon which the district court did not rely"). Absent special circumstances, we generally "measur[e] a reasonable time for demand by the period of limitation for bringing suit." 3A Corbin, *supra,* § 643, at 75; *see Gossard v. Gossard,* 149 F.2d 111, 112–13 (10th Cir.1945); *Town of Warren v. Ball,* 341 Mass. 350, 170 N.E.2d 341, 343–44 (1960); *Slack v. Bryan,* 299 Ky. 132, 184 S.W.2d 873, 877 (1945); *Keithler v. Foster,* 22 Oh.St. 27, 31–32 (1871). Thus, a delay between default and demand that does not exceed the applicable limitations period is ordinarily regarded as reasonable. *See United States v. First City Capital Corp.,* 53 F.3d 112, 115–16 (5th Cir.1995); *see also Fellows v. National Can Co.,* 257 F. 970, 979

(6th Cir.1919); *Sullivan v. Ellis,* 219 F. 694, 698 (8th Cir.1915).

The Gordons have adduced no special circumstances excepting them from this time-tested rule of thumb. And, the government made its first demand four years after Tableau's earliest default—well within § 2415(a)'s six-year limitations period. Given the sparse record, we see no reason to disagree with the district court that the demand here was made within a reasonable time after Tableau's default. Accordingly, as a matter of law, the demand was not unreasonably delayed. Thus, we need not address whether the district court erred by requiring the Gordons to demonstrate prejudice from the government's delay.

■ The government, on the other hand, frets that reading a reasonable time requirement into the guaranty will automatically subject it to the defenses of laches and equitable estoppel, *United States v. Boozer,* 732 F.Supp. 20, 23 n. 4 (N.D.N.Y.1990), even though laches is no "defense to an action by the sovereign," *United States v. Mack,* 295 U.S. 480, 489, 55 S.Ct. 813, 817–18, 79 L.Ed. 1559 (1935); *see United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940), and equitable estoppel applies against the government only "in the most serious of circumstances," *United States v. RePass,* 688 F.2d 154, 158 (2d Cir. 1982). We are not moved.

In the first place, the requirement that the government bring suit against the guarantors within a reasonable time after the borrower's default has nothing to do with the equitable defenses of laches and estoppel. Rather, it is simply an implied condition to a contract, which the government entered into voluntarily, and which the government is now trying to enforce in a garden variety action at law, as distinguished from equity. *See DeWeerth v. Baldinger,* 836 F.2d 103, 110 (2d Cir.1987) ("Laches is an equitable defense that requires a showing of delay and prejudice to the defendant, whereas the reasonably prompt demand principle involved in this case is a legal doctrine based exclusively on an unexcused lapse of time."); *cf. Mack,* 295 U.S. at 489, 55 S.Ct. at 817–18 ("Laches

within the term of the statute of limitations is no defense at law.").

Furthermore, if a contract does not expressly limit a party's time to perform, courts routinely require performance within a reasonable time. *See, e.g., Continental Cas. Co. v. Stronghold Ins. Co.,* 77 F.3d 16, 21, (2d Cir.1996). This general rule certainly applies when the shoe is on the other foot, and a private party sues the government under a contract. If, for example, the contract contains an administrative appeal provision, the right of action against the government accrues upon exhaustion of the administrative remedy. *Crown Coat,* 386 U.S. at 511, 87 S.Ct. at 1181–82. To prevent the private party from suspending indefinitely the running of the applicable limitations period, 28 U.S.C. § 2401, "the contractor cannot delay unreasonably in presenting his claim" administratively. *Crown Coat,* 386 U.S. at 519, 87 S.Ct. at 1186. Similarly, because the controlling statute of limitations here—§ 2415(a)—aims to "equaliz[e] the litigative opportunities between the Government and private parties," *Crown Coat,* 386 U.S. at 521, 87 S.Ct. at 1187, it seems only fair to bar the government from "forestalling commencement of the limitation period by inordinately failing to make demand for payment necessary to allow [its] cause of action to accrue." *Garan,* 12 F.3d at 860. To hold otherwise would subvert § 2415(a)'s purpose. *Commodities Export Co.,* 972 F.2d at 1271 n. 3.

Finally, the policy underlying statutes of limitations generally—"that there may be, at some definitely ascertainable period, an end to litigation," *Reading Co. v. Koons,* 271 U.S. 58, 65, 46 S.Ct. 405, 407, 70 L.Ed. 835 (1926)—supports a reasonable time requirement. Courts should not have to resolve stale claims premised on events that occurred decades ago. *See Cocoa Berkau, Inc.,* 990 F.2d at 614. And, because Congress here has clearly imposed a time limitation on the government's right to bring suit, *E.I. Du Pont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924), we should not read the guaranty in a way that would undermine Congress's intent. *Cf. Irwin v. Department of Veterans Affairs,*

498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (once Congress waives sovereign immunity, "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver").

In sum, on this record, the government did not unreasonably delay in making its written demand on the Gordons. Consequently, its right of action against the Gordons accrued upon that demand, and not before. This suit is timely as a matter of law.

Accordingly, the judgment is AFFIRMED.